(No. 16776.—Reversed and remanded.)
THE BELL & ZOLLER MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLES MAKAIMOVICH, Defendant in Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*burden is on applicant to establish claim for compensation.* The burden is on the applicant to establish his claim for compensation by competent evidence, and the Industrial Commission should weigh the evidence and make its findings for the party in whose favor the evidence preponderates.

2. SAME—*when evidence does not support award for complete loss of use of arm.* Complete and permanent loss of the use of an arm means that the injured party is not able to make use of the arm in any character of employment to earn wages, and although the evidence shows that an employee will never be able to use his arm in the employment at which he formerly worked in mining and loading coal, an award for complete and permanent loss of use of the arm is not justified where the evidence tends to show that the employee is able to do light work with the injured arm and that its condition is continuing to improve.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. J. C. EAGLETON, Judge, presiding.

JOHN J. SHERLOCK, (W. JOE HILL, and C. B. CHAPMAN, of counsel,) for plaintiff in error.

A. W. KERR, and A. C. LEWIS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On his application for compensation Charles Makaimovich was awarded compensation by the arbitrator of $16 per week for 8-2/7 weeks for temporary total incapacity and $16 per week for 50 weeks for twenty-five per cent permanent and complete loss of use of the right arm for an injury received by him while in the employ of plaintiff in error, the Bell & Zoller Mining Company. On review at his instance the Industrial Commission made the same award for temporary total incapacity and $16 per week for a period of 200 weeks for complete and permanent loss of the use of the right arm. The circuit court of Franklin county confirmed the award of the commission and this court allowed a writ of error to review the record.

The only question in dispute before the arbitrator and the commission was as to the nature and extent of the injury. Four expert witnesses testified in this case. They were physicians and experts in the use of X-ray machines. They all agreed in their testimony that the defendant in error had his clavicle, or collar bone, fractured and his fifth or sixth rib on the right side fractured in two places, and that there was a complete union of these fractures without any overlapping ends of the bones and that he had completely recovered from such fractures, and that those fractures had nothing to do with the condition of his right arm, the injury to which was the sole cause of his complaint for a permanent injury. One of the physicians

stated that the fifth rib was fractured and another stated that the rib fractured was the sixth, but it is of no material difference whether the rib fractured was the fifth or sixth, and it is probable that there is no difference in the testimony of these two physicians in intention and that the difference occurs because their attention was not called especially to that fact. The average annual earnings of the defendant were shown to be $1456, and that he had two children under the age of sixteen years. As there is no contention that the above named fractures had any effect on the use of the right arm, it will only be necessary to consider the evidence as to the extent and injury to the right shoulder, which defendant in error claims rendered the loss of the use of his arm complete and permanent.

On the question in issue defendant in error testified before the arbitrator that on February 28, 1923, he was injured by a collision of the man-trip through the mine, in which his right shoulder was broken, and as a result of that injury he was not able to use his right arm. He could not raise it more than forty-five degrees, or on a straight line outward from his shoulder. He could hardly lift the coffee pot from the stove, and could not lift with that arm a baby one year old from the ground, or lift a chair. The whole of his shoulder in front pained him. On the hearing before the commission, more than fifteen months after the injury, he testified that there had been no change in his condition, and that he was unable to use his right arm for any purpose and that he felt pain over his arm and shoulder when he tried to move it. He was fifty-one years old and had never before had any trouble with his arm and shoulder.

Dr. H. M. Turner testified for him that he examined him on May 12, 1923, and made an X-ray picture of that part of defendant in error's body that was injured. The X-ray picture showed a fracture of the neck of the scapula,—the shoulder blade. As a result of the fracture there

was a displacement of the neck of the scapula downward, the result of which was an inability to raise the right arm properly and to mobilize it as he ordinarily could and did. There was no callus formation in this fracture, and the reason therefor was because of the displacement there. It was his opinion that the fracture would unite after a period of time. The injury was such as would cause excruciating pain, and in his judgment it would not have been proper for him to have gone back to work at the time he examined him. He had present with him a shoulder blade, with which he illustrated the position of the fracture and the workings of the arm. One of the commissioners who heard this evidence examined the petitioner.

Three physicians testified for the plaintiff in error, Dr. W. H. Gillmore testifying that he lived at Benton and that · he made an X-ray examination of defendant in error on January 14, 1924, and made two films and had them with him and produced them in court as exhibits. He testified that those films properly portrayed the bone pathology of defendant in error's shoulder at that time and that there is no fracture of the scapula shown, and that the plate was made with the patient lying on his back.

Dr. J. B. Moore, of Benton, testified that he examined the defendant three times,—January 14, 1924, April 14, 1924, and June 9, 1924. Upon the first examination he made a special examination of his shoulders in conjunction with the X-ray examination of Dr. Gillmore. His arms and shoulders showed nothing unusual, except that he carried the right arm to a position horizontal with the top of his shoulder, and did not carry it actively any more than that on that day. With a little assistance of the witness' fingers he carried it to a perpendicular position. In raising the arm his fingers were only used to prompt him. He explains that by perpendicular to the shoulder he means straight out, which means at a right angle with his body. He further stated that the muscles touching in and around

the shoulder, including the trapezium and deltoid and the scapular muscles, all showed good tone and development, with no atrophy. There was no restriction of the scapula or in the shoulder. He made a measurement of the biceps of the arm and compared them and found that each measured ten and one-half inches in circumference. The mobility of the scapula was normal, both in active and passive motion. There was no evidence of disturbance in the scapula or neck of the scapula. He found no other condition that would prevent the normal use of applicant's right arm. In his opinion he was able to work at that time. On April 14 he found the man in good general health,—nothing unusual in the arms, hands or shoulders. At that time patient voluntarily carried his arm perpendicularly over the head. His biceps then measured eleven inches. He found nothing abnormal in or around the shoulder blades and it had normal, free movement, with no visible disturbance of any kind. He found no condition at that time that would account for his complaint of lack of mobility or use of his right arm. He was well developed physically with reference to the muscles of his arms and shoulders and had the appearance of a strong, able-bodied man, able to work. He again made an examination on June 9 with reference to his shoulders, chest and arms, and found that there was nothing unusual in the arms, hands and shoulders, and that his biceps then measured eleven and one-half inches in circumference. The arms were then carried perpendicularly over the head repeatedly. There was no evidence of disturbance at that time in and around the shoulder joint, and in his opinion he had fully recovered from his injury. He stated that there was no crepitus in moving the right arm at the time of his examination, and if there had been a crepitus it might or might not indicate an injury. He heard nothing that he considered an abnormal joint crepitus, and stated that there is a normal joint crepitus in all shoulder joints. On his cross-examination he stated that he appar-

ently carried his arm longitudinally with the shoulder without difficulty. He said that he had distress in carrying it higher. Witness did not think he had considerable pain in doing it. On April 14 he carried both his arms up perpendicular to the shoulder and held them that way and did it repeatedly.

Dr. D. B. Stewart, of Zeigler, testified that he gave defendant in error a physical and X-ray examination and that he was the physician who treated him; that he put his right arm and shoulder in splints and made a good X-ray picture of it. He was able to find no fracture of the scapula on the flat X-ray picture he made. He treated him at the hospital twenty-eight days and discharged him on April 27, 1923, to go to work. He had some limitation of motion in the right shoulder. He had extension of his arm to almost a right angle from his body and he could flex the arm next to the body in front of him fairly well. There was no limitation of his arm from the elbow down. The witness could not raise his arm much above the right angle. He complained of pain. There was seemingly a small crepitus that might have kept his arm from going up. He stated that his patient could do light work on April 27. He has not noticed any improvement in his condition between times, and knows of no reason why he should not have lifted objects as high as he could move his arm. On cross-examination he stated that upon the passive motion of the arm there was a slight crepitation, which could be accounted for by a fracture of the scapula, but that would not account for the limitation. If there was a fracture of the scapula that would account for the limitation, or the putting of his arm in a splint could account for a certain amount of limitation. If there is a fracture of the scapula, working or lifting the arm above a certain degree would be intensely painful. There would be no strain on the fractured parts until there was some pressure on the fracture. Any strain of the fractured part would prevent re-uniting and knit-

ting in recovery. In his judgment he was able to do light work on April 27, 1923.

Paul Volovin, who acted as interpreter on the hearing, was called as a witness for the defendant in error but was not allowed to testify upon objections by plaintiff in error. The defendant in error then offered to prove by this witness that he was present at the examination of defendant in error by Dr. Moore and that he did not raise his arm any higher than forty-five degrees, and when he did raise it that high his face showed evidence of great pain. No point is made in this case on the refusal of the commission to allow this witness to testify. We may further say that we do not understand Dr. Moore to testify that the defendant in error raised his arm any higher than a perpendicular position, which the doctor explained to be straight out from the shoulder, or to an angle of forty-five degrees from the perpendicular line of his body. This is probably the reason that the commission did not allow this testimony in rebuttal, which, in fact, did not rebut the testimony of Dr. Moore.

William Hogan testified for petitioner that he knew him and was near him at the hearing before the commission when his right arm was slowly raised. He was sitting in the back part of the room at that time and heard a slight cracking sound when he raised his arm.

The foregoing is the substance of the entire evidence of the case, except the further fact that $132.57 was without dispute paid on the award by the company. We have repeatedly laid down the rule that the burden is on the applicant to establish his claim for compensation by competent evidence and that the commission should weigh the evidence and make its findings for the party in whose favor the evidence preponderates. On the other hand, it is not the province of this court to review conflicting evidence and substitute its judgment for that of the Industrial Commis-

322—26

sion. The award in this case is for the complete and permanent loss of the use of the right arm of the defendant in error from the injury. The evidence shows clearly that the defendant in error was entitled to compensation, but it does not show that there was a complete and permanent loss of the use of the right arm, as contended by the defendant in error. The undisputed evidence in this case shows without question, in our judgment, that the defendant in error has not completely and permanently lost the use of his right arm for some kinds of light work. Complete and permanent loss of the use of the right arm means that he is not able to make use of it in any character of employment to earn wages. It is not sufficient to show that the use of the arm is so impaired that he can never use it to perform the work that he formerly performed in the mines or a use of the pick and shovel in mining and loading coal. The undisputed evidence shows that the defendant's arm has improved since it was injured, and the undisputed evidence is that his arm and shoulder now discloses no atrophy of muscles, and that his arm has continued to improve and the biceps of the right arm have increased one inch in circumference since the day of Dr. Moore's first examination. No witness denies this fact testified to, and the testimony of Dr. Turner, his own witness, is to the effect that the fracture of his scapula would unite after a period of time, and the testimony of two other physicians is to the effect that he is able to do light work, which means in some other employment where heavy work and strong muscular power of the right arm are not required. The testimony of applicant is not inconsistent with the claim that he is able to do light work with his right arm, the complete use of which from his elbow down he has, and all the evidence further shows that it is only when he undertakes to use his arm in upward movements that he is given pain. The evidence also has a strong tendency to show that his arm will still improve.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to refer the claim to the Industrial Commission for further consideration upon the record now presented and on any further evidence either of the parties may choose to present.

*Reversed and remanded, with directions.*