(No. 29835.—

Cinch Manufacturing Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Edward J. Deeniham, Defendant in Error.)

*Opinion filed September 18, 1947.*

McNamara, Greene & O'Brien, of Chicago, (William Greene, and John A. Nordstrand, of counsel,) for plaintiff in error.

E. Anne Mazur, of Chicago, and Robert H. Allison, of Pekin, (George W. Angerstein, of Chicago, of counsel,) for defendant in error.

Mr. Justice Stone delivered the opinion of the court:

By this writ of error plaintiff in error seeks the reversal of a judgment of the superior court of Cook county, which confirmed an award of the Industrial Commission to defendant in error for the permanent and total loss of the use of his left arm, as the result of an accidental injury which arose out of and in the course of his employment by plaintiff in error.

Defendant in error, Edward J. Deeniham, when 9 years of age, lost his left hand and a portion of his forearm by amputation, leaving 4½ to 5 inches of the forearm. This was, of course, a noncompensable accident. In 1941 he was employed by plaintiff in error in its plant as a janitor. He was at that time about 55 years of age. On March 10, 1944, while engaged in cleaning the bowls in the washroom, some person pushed the door open striking his left elbow,

causing a fracture to the olecranon process of the left ulnar bone. Plaintiff in error's doctor reduced the fracture. Subsequently an infection developed. Plaintiff in error furnished hospitalization and medical care and after 8⅚ weeks defendant in error returned to work for plaintiff in error. Compensation of $17.63 per week for 8⅚ weeks temporary total disability was paid by plaintiff in error.

On January 4, 1945, defendant in error filed an application for adjustment of claim. Defendant in error's earnings were agreed to be in excess of $1500 during the year previous to the accident. Before the arbitrator it was stipulated that first aid, medical, surgical and hospital services were provided by plaintiff in error; that $153.63 had been paid to defendant in error by plaintiff in error for 8 ⅚ weeks temporary total disability.

The evidence before the arbitrator consisted of defendant in error's testimony and that of his doctor and a doctor for plaintiff in error. Defendant in error testified that notwithstanding the injury when he was 9 years of age, he had trained himself to use the remainder of his left arm in carrying furniture, climbing ladders with pails of water, shoveling and wheeling coal, and in his work as a janitor for plaintiff in error he swept floors, moved machines so he could sweep under them, and emptied rubbish barrels. He testified that he used a broom with his left arm by holding the handle of the broom in his elbow joint.

He further testified that he returned to work in May, 1944, doing janitor work; that he had a helper up to about six months before the hearing; that he was still employed as janitor but he now puts the broom handle under his arm pit, to sweep, and when he has hard work to do he has to have help; that he now has to get help to dump the garbage barrels; that since the accident he has not climbed ladders nor picked up chairs with his left arm; that he notices pain when a weight is put upon his

arm; that the stump is touchy; that prior to the accident he could bend his left elbow all the way back and touch his face but cannot do it since this injury. He testified that when he tries to use his left arm in his work it gets "sore, weak and gets awful tired." He stated that he is earning the same wages for the work he is doing as he got before the injury.

Dr. George C. Coe, for defendant in error, testified he examined defendant in error July 10, 1945. The examination consisted of history, physical examination of both arms and X-ray study of the left arm; that the objective findings were: The left arm had been amputated through the mid-forearm; the remainder of the arm appeared atrophic, and a 3½-inch scar was noted over the posterior surface of the elbow region; movements of the arm at the elbow were limited actively and passively; the passive ranges of movement were that flexion was limited to approximately 90 degrees and extension to approximately 130 degrees; that the two views of the X ray show a dislocation of the upper end of the radius, and deformity of the radius below the head of the elbow, which indicates an old fracture of the proximal portion of the radius. In answer to a hypothetical question, he stated his opinion then was, with a reasonable degree of medical certainty, that there could or might be a causal connection between the accident of March 10, 1944, and the subsequent condition, and that the hypothetical individual had permanently lost the industrial use of that arm.

Dr. William R. Cubbins, a witness for plaintiff in error, testified he examined defendant in error in November, 1944, and found he had an operation for a fractured olecranon, which had been repaired by a Dr. Corbett. He stated that he found definite flexion which seemed to him to lack very little of being complete flexion; that the extension lacked probably 10 degrees of complete extension. The arm was not completely healed, as there was a slight

area of discharge; that he formed an opinion at that time that there was no need for any further treatment and in his opinion defendant in error was perfectly able to return to work. He testified that defendant in error made no complaint except as to the condition of the elbow; that he could see no reason why he should not do such things as hold a broom in the left elbow joint and sweep with that broom. In his opinion defendant in error could hold onto a ladder with the stump of the forearm, hold a pail of water and lift a chair in the crook of the elbow of his left arm, and that he did not complain of any pain from the end of the stump to the shoulder joint at the time he examined him.

The arbitrator found defendant in error entitled to receive from plaintiff in error $17.63 per week for a period of 8 5⁄7 weeks, as the period of temporary total incapacity for work. He further found that, as the result of a previous and independent injury, defendant in error suffered a permanent loss, by amputation, of his left hand; that he is entitled to have and receive from plaintiff in error $17.63 per week for the further period of 55 weeks, as provided by paragraph (e) and subparagraph 17½ of paragraph (e) of section 8 of the Workmen's Compensation Act, as amended, for the reason that the injury sustained, together with the permanent loss of the left hand as a result of a previous injury, created permanent and complete loss of the left arm, and that plaintiff in error, in addition to the compensation awarded defendant in error, pay into the special fund provided for in paragraph (e) of section 7, of which fund the State Treasurer is *ex-officio* custodian, the sum of $100, as provided in subparagraph 20 of paragraph (e) of section 8, and that the sum of $153.63 has been paid on account of said injury.

Upon review sought by both parties, the commission, without further evidence, set aside the decision of the

arbitrator and awarded defendant in error the sum of $17.63 for 8⅝ weeks temporary total disability and the further sum of $17.63 per week for 225 weeks, for the reason that said accidental injury resulted in the permanent total and complete loss of use of the left forearm, and directed plaintiff in error to pay $100 into the special fund, as found by the arbitrator. The superior court affirmed the decision of the Industrial Commission.

The errors urged are that defendant in error is not entitled to any further and additional compensation beyond the 8⅝ weeks for temporary total incapacity for work, and that the decision and award of the Industrial Commission are contrary to the manifest weight of the evidence. It is further contended that the employee sustained the loss of his arm within the meaning of the act when it was amputated 4 or 5 inches below the elbow, and that under subparagraph 17½ of paragraph (e) of section 8 of the act, such previous loss of the use of the left arm would have to be taken into consideration and deducted from any award for subsequent injury.

In support of its contention that defendant in error is not entitled to recover more than compensation for 8⅝ weeks, the period of temporary total incapacity for work, because, in legal contemplation and under the act, by the amputation of his hand and part of the forearm prior to his employment by plaintiff in error he had permanently lost the complete use of his entire arm, plaintiff in error relies upon *Payne* v. *Industrial Com.* 296 Ill. 223, which held that an employee lost his entire leg by amputation ten inches above the ankle and was entitled to compensation for such loss. In that case the accidental injury resulting in the amputation arose out of and in the course of the employment, and it was held that the loss of any substantial portion of the leg constitutes the loss of the leg within the meaning of the act, and the finding that amputation of the leg ten inches above the ankle joint

entitled the employee to compensation for the loss of the leg was sustained. The argument is that since in such a case the employer, if the injury is compensable, is required to pay for the loss of the entire member, there can be no further liability for loss of such member, and the fact that the first injury was not compensable is of no consequence. That case differs so widely, on the facts, from the one before us as to render it inapplicable. The question presented for determination here is whether the last injury so affects the use of what remained of his left arm as to destroy its use for any work. (*Bell & Zoller Mining Co. v. Industrial Com.* 322 Ill. 395.) Upon no legal theory can an employer be held liable to pay compensation under the act for an accident that did not occur during the employment. (*Chicago Journal Co. v. Industrial Com.* 305 Ill. 46.) Had the accident here complained of required the amputation of defendant in error's arm $4\frac{1}{2}$ to 5 inches below his elbow, then, under the provisions of the act, his employer would be required to pay for the loss of an arm, whether the injury partially destroyed his capacity for work temporarily or permanently, or destroyed his entire capacity to work permanently, without regard to the question of his loss of capacity to follow his occupation. This is so because the act so provides and the General Assembly has power to enact such a statute. *Chicago Journal Co. v. Industrial Com.* 305 Ill. 46.

In *Chicago Bridge and Iron Co. v. Industrial Com.* 316 Ill. 622, the employer paid to the employee compensation for 90 per cent permanent loss of the use of one of his eyes as the result of an injury arising out of, and in the course of, his employment. Later the same employee received an injury to the same eye, resulting in total blindness in that eye. On his application for compensation he was awarded full compensation under item 16 of paragraph (e) of section 8 by the Industrial Commission, which the circuit court on review confirmed. In affirming

the award this court said: "The compensation fixed by the act is for the loss of a member of the body, and the same compensation is due and payable whether the eye lost is the eye of a youth or of an old man, an eye with perfect vision or one imperfect by reason of natural defects or a previous injury." Thus the employer paid compensation for 90 per cent permanent loss of the sight of the eye and later paid compensation for 100 per cent permanent loss of the sight of the same eye. It was doubtless due to this holding that the General Assembly in 1927 enacted subparagraph 17½ of paragraph (e) of section 8. (Ill. Rev. Stat. 1945, chap. 48, par. 145, p. 1648.) That subparagraph is as follows: "In computing the compensation to be paid to any employee who, before the accident for which he claims compensation, had before that time sustained an injury resulting in the loss by amputation or partial loss by amputation of any member, including hand, arm, thumb or fingers, leg, foot, or any toes, such loss or partial loss of any such member or the sight of an eye shall be deducted from any award made for the subsequent injury, and for the permanent total loss of use or the permanent partial loss of use of any such member for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." This subparagraph has not heretofore been presented for construction.

In cases like this there are but two classes of cases that can come before the court: (1) where the prior injury resulted in loss of a member by amputation for which no compensation had been paid, and, (2) where prior injury resulted in the loss of use of a member for which compensation had been paid. Each class deals with a different state of facts. In the case under consideration we are dealing with a case of the first class. The plain language of the act shows a clear intention that in computing compensation to an employee for accidental injury or loss of

a member arising out of and in the course of his employment, the employer is entitled to have deducted from the compensation awardable for such later injury, the amount such injured employee would have been entitled to be paid, whether compensable or not, for an injury or loss which occurred prior to the last injury or loss for which compensation is sought. For a permanent total or permanent partial loss of the use of any designated member for which compensation had been paid, such loss shall be taken into consideration and deducted from any award for the last injury to such member. In other words, the intent as expressed in the act is to limit an employer's liability to pay only for the loss of ability to work which is the direct result of the last injury or loss. It is true, as argued by defendant in error, that such a deduction in a case where no compensation has been paid for the first injury must be estimated, unless the first injury is to be considered a complete loss.

That defendant in error had not, however, lost the entire use of his arm when he was employed by plaintiff in error, and when he received an accidental injury to the same arm, for which he claimed compensation, is shown by his own testimony. It was the duty of the Industrial Commission, in computing the compensation to be allowed defendant in error, to deduct such former loss from any award allowed for the last injury.

Defendant in error's testimony does not support the finding that he has permanently lost the entire use of what remained of his left arm. He admitted he returned to work for plaintiff in error at the expiration of $8\frac{5}{7}$ weeks temporary total incapacity to work, doing the same character of work, though he did not do all the work he did before the accidental injury received by him, and that he received the same wages he received before the accidental injury. He testified that he used what remained of his left arm, in his work after his re-employment, but claimed

he could not do all the work with it that he did before the accident. The medical testimony is in harmony that he has movement of the elbow joint, but is in disagreement as to the degree thereof and as to the effect the degree has upon his use of what remains of his forearm.

The act allows compensation for total disability where the employee, by reason of an accidental injury arising out of and in the course of his employment, has lost his entire capacity for work. (*Chicago Journal Co.* v. *Industrial Com.* 305 Ill. 46.) The record shows that Deeniham suffered some loss of the use of his arm, beyond the period of his temporary total loss of his capacity to work covering a period of $8\frac{5}{7}$ weeks, but the extent of that loss is not shown to be a complete loss of the use of that member.

Complete and permanent loss of the use of his left arm means that the claimant is not able to make use of it in any character of employment to earn wages. It is not sufficient to show that the use of the arm is so impaired that he can never use it to perform the work he formerly performed in the employ of plaintiff in error. *Bell & Zoller Mining Co.* v. *Industrial Com.*, 322 Ill. 395.

The award for temporary total incapacity to work was right but the finding that he had lost the entire use of his left arm and the award for such loss are not sustained by the record. The requirement that plaintiff in error pay the award of $100 to the special fund provided for by the act was likewise error, for the reason that the act is applicable only when the claimant has suffered the permanent total and complete loss of the use of a member.

The judgment of the superior court and the award of the Industrial Commission are reversed and the cause is remanded to the superior court with directions to remand the cause to the Industrial Commission for further consideration upon the record now presented and on any further evidence either of the parties may choose to present.

*Reversed and remanded, with directions.*