(No. 4191 )

ELMER A. BELL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 7, 1950.*

FRANCIS P. FLYNN, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

LANSDEN, J.

Claimant, Elmer A. Bell, seeks to recover under the

provisions of the Workmen's Compensation Act for injuries that resulted from an accident arising out of and in the course of his employment with the Department of Public Works and Buildings, Division of Parks and Memorials.

On August 24, 1948, claimant, then 71 years of age, married but having no children under 16 dependent upon him for support, was employed as park custodian at Channahon Park, northwest of Channahon, Will County, Illinois. This park is located adjacent to the Illinois-Michigan Canal. While walking along the canal bank in performance of his duties cleaning up the park wood lot, claimant, on that date, slipped and fell down the bank slope, and his right shoulder struck a rock.

About one week after the accident, claimant started having medical treatment by respondent's doctors, which continued for several months. Finally on March 10, 1949, an operation was performed on his shoulder by one of respondent's doctors in an effort to correct the damage to his shoulder which caused sharp pain and marked limitation of motion in his right arm and loss of grip in his right hand. Another reason for the operation was to remove a tumor in the under-arm which probably resulted from intravenous medication administered by one of respondent's doctors.

Shortly after the operation and, while still in the hospital recuperating, a swelling appeared in claimant's left leg below the calf. This trouble was diagnosed as thrombo phlebitis, a not too unusual condition resulting from post-operative confinement. The leg swelling persisted without appreciable improvement and added another disability to that already suffered in the right shoulder and arm.

No jurisdictional questions are involved in this case,

and the questions to be determined are the extent of loss of use of claimant's right arm and left leg as a result of the accident and treatment furnished him by respondent.

The medical testimony in the case is not in fundamental conflict. From such testimony the Court must draw its own conclusions. Claimant contends that industrially he has lost the entire use of his right arm. Respondent does not dispute this too vigorously.

The evidence shows that the condition of claimant's arm and shoulder is static, neither improving nor retrograding. He can raise his arm only 30 degrees from his side; forward motion is only 45 degrees and backward motion is about 10 degrees. Rotation is within normal range and his elbow is unimpaired. His grip is markedly lessened. In addition, portions of the mechanism of his shoulder were removed or altered by the operation performed upon him.

From these facts the Court concludes that claimant has suffered a 75 per cent loss of use of his right arm.

The case of *Mandel Bros.* v. *Ind. Com.*, 359 Ill. 405, is rather analogous on the facts with this case, and the court in that case approved an award of the Industrial Commission for 66 2/3 per cent loss of use of the injured man's arm.

The Court cannot agree with the contention of claimant that industrially he has lost the entire use of his right arm.

In *Bell & Zoller Mining Co.* v. *Ind. Com.*, 322 Ill. 395, at page 402, the Court said:

"Complete and permanent loss of the use of the right arm means that he is not able to make use of it in any character of employment to earn wages. It is not sufficient to show that the use of the arm is so impaired that he can never use it to perform the work that he formerly

performed in the mines or a use of the pick and shovel in mining and loading coal."

As to the per cent of loss of use of claimant's left leg, the testimony shows that there has been little fundamental improvement since the thrombo phlebitic condition arose except for such benefits that he received from hospital treatment. This condition limits to two or three hours per day the time claimant can be on his feet, and he has difficulty in climbing flights of stairs and, after standing for some time, his left leg weakens and becomes numb and tired.

That claimant's leg condition is due to the treatment and operation furnished by respondent, at its request, is conceded by the medical testimony. That, under such circumstances, respondent is liable has been determined in *Kivish* v. *Ind. Com.*, 312 Ill. 311, and *Lincoln Park Coal Co.* v. *Ind. Com.*, 317 Ill. 302.

The Court, therefore, concludes that claimant is entitled to an award for 20 per cent loss of use of his left leg.

Subsequent to his accident, claimant was paid full wages and performed light work for respondent until he was discharged in the late spring of 1949, except for the period of 28 days he was hospitalized because of and convalescing from his operation. For the period he was paid $136.29.

All medical expenses were furnished and paid for by respondent, amounting to $1,019.20.

William J. Cleary & Co., Court Reporters, Chicago, Illinois, were employed to take and transcribe the testimony before Commissioner Young. Charges in the amount of $137.70 were incurred, which charges are reasonable. An award is, therefore, entered in favor of William J. Cleary & Co. for $137.70.

Claimant's earnings in the year prior to his injury amounted to $1,800.00. He is entitled to an award under Section 8 (e) (13, 15, 17) of the Workmen's Compensation Act. His rate of compensation is $19.50 per week.

An award is, therefore, entered in favor of claimant, Elmer A. Bell, for $4,031.63, being the sum of $3,290.63 for 75 per cent loss of use of his right arm, and $741.00 for 20 per cent loss of use of his left leg. During the 28 day period claimant was hospitalized and convalescing from his operation, he was entitled to compensation for temporary total disability amounting to $78.00 yet he was paid $136.29. He was thus overpaid $58.29. The net award is, therefore, $3,973.34.

This award is payable as follows:

$1,560.00 less overpayment of $58.29 equals $1,501.71 which has accrued and is payable forthwith;

2,471.63 which is payable in weekly installments of $19.50 per week for 126 weeks commencing on March 15, 1950, plus one final payment of $14.63.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."