(No. 15861.—Reversed and remanded.)
MARY KIVISH *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE HARRISBURG COLLIERY COMPANY, Defendant in Error.)

*Opinion filed April 14, 1924—Rehearing denied June 6, 1924.*

1. WORKMEN'S COMPENSATION—*statements of an injured employee are hearsay.* In a proceeding for compensation for the death of an employee, statements made by him after his injury are hearsay and incompetent, but where they are received without objection they are to be considered and given their natural probative effect as if they were in law admissible.

2. SAME—*rules of evidence are same as in common law actions.* In proceedings under the Workmen's Compensation act the rules respecting admission of evidence are the same as those that prevail in common law actions for personal injuries, the procedure, only, being different.

3. SAME—*employer is responsible for result of hospital treatment demanded by him.* While the employee must submit to proper treatment at the request of the employer or forfeit his right to compensation, the employer is, on the other hand, liable for the consequences of hospital treatment to which the injured employee submits in compliance with the employer's demand.

4. SAME—*when death from pneumonia is the proximate result of injury.* Where a miner suffers severe injuries when buried under a fall of coal and never recovers from the bruises to his limbs and chest but grows continually weaker and develops pneumonia while confined to his bed in a hospital, where he was sent on demand of his employer's insurance company, death resulting from the pneumonia must be deemed to have been proximately caused by the injury.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. A. E. SOMERS, Judge, presiding.

CHARLES T. FLOTA, (J. B. LEWIS, of counsel,) for plaintiffs in error.

MILEY & COMBE, (R. H. DAVIS, of counsel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The circuit court of Saline county confirmed a decision of the Industrial Commission denying an award to plaintiffs in error for damages arising out of the death of Alex Kivish, and this court directed that the case be further reviewed on writ of error.

Vince Balog testified that he was working with Kivish in the mine of defendant in error on April 11, 1919; that Kivish was buried under a fall of coal; that another workman helped him take the coal off Kivish; that one piece was so large that both men were required to handle it, and that Kivish was hauled out of the mine in a coal car.

Dr. M. D. Empson, the company surgeon, testified that he examined Kivish immediately after he was injured; that he found his right knee wrenched and contused, his left thigh lacerated and contused and his chest bruised; that the injured man coughed and spat blood; that he treated him regularly until June 1, 1919; that during all that time the patient suffered from his injuries, coughed and spat blood; that he saw the injured man on six different occasions after he discontinued calling on him regularly; that the patient did not improve much and was not much improved when he was taken to the hospital in January, 1920; that at that time he was weak and pale and his vitality low; that he gave him a sedative to check his cough; that the patient lost flesh and continued to grow weaker from the time he was injured to the time he was taken to the hospital; that the man was seriously hurt and that he never entertained any hope of a permanent recovery; that he did not see him after he was taken to the hospital in St. Louis, where he died; that he did not know the cause of his death, but that a man in his weakened condition would be more liable to contract disease and to succumb to it.

Mary Kivish, widow of deceased, testified that before her husband was injured he was a strong, healthy man,

weighing about 170 pounds; that he was never sick before he was injured; that after his injury he was confined ·to his bed for more than three months and was never able to walk without crutches; that he lost weight and continued to grow weaker until he was taken to the hospital; that his entire body, except the right shoulder, was bruised, and that he continually complained of pain; that the company which insured the employer against liability paid compensation for about nine months and then refused to pay more unless her husband went to a hospital in St. Louis and consented to an operation; that they forced him to undergo an operation or surrender his right to compensation; that they took her husband to Dr. Niedringhaus, in St. Louis, who placed him in a hospital; that he was treated by the doctor at the request and expense of the insurance company; that she visited her husband at the hospital a week after he was taken there and again a week before he died; that her husband was in bed continuously while she was there, and that he told her his leg was not improving and that he had not been out of bed; that he spat blood from the time he was injured until he died; that they attached heavy weights to his foot to stretch his leg and piled weights on his knee to·straighten it; that he suffered great pain from this treatment and some of the weights were taken off the knee; that he told the nurse the weights would kill him if some of them were not taken off; that all the weights were taken off his leg when he became seriously ill, about February 1; that there was never a plaster of Paris cast on his leg.

Andy Kish testified that he acted as interpreter in adjusting compensation between the insurance company and the injured employee; that the representative of the insurance company told him to say to Kivish that they had paid him compensation for nine months without improvement and that they would not pay him another dime unless he went to the hospital to be treated; that the representative

drew a check payable to Kivish for something more than $100, handed it to witness and instructed him to hold it until Kivish was willing to go to the hospital; that he held the check for a few days to give Kivish time to consider the matter; that Kivish finally decided to go, and pursuant to his arrangement with the insurance company witness accompanied him to St. Louis to see Dr. Niedringhaus; that an X-ray examination was made, and the doctor then told witness to take Kivish to the Missouri Baptist Hospital; that the patient was so weak and crippled that witness had to help him on and off the trains; that when they walked along the street the patient would stop and cough and would have to rest before he could go on; that when he coughed he often expelled a dark substance which looked bloody; that the patient claimed that he was injured internally; that he visited the patient at the hospital; that he never saw a cast on his leg; that the patient said he had never been out of bed and that they stretched his leg; that several weeks later he was called to the hospital and was told the patient was dying; that he found the patient lying in bed; that there were three doctors around him; that the patient said to him, "I am gone; they killed me."

Dr. Ralph E. Niedringhaus testified that he began treating Kivish on January 8, 1920, for an injury to his right knee; that the internal lateral ligament was ruptured; that he placed him in the Missouri Baptist Sanitarium and saw him practically every day until he died, February 7; that he was treated as a surgical patient until he developed influenza, January 27; that at that time his knee was well and he was walking about the ward; that when the patient was first taken to the hospital he placed his leg in a cast in order to immobilize the knee so that the joint could not be moved; that the cast was later taken off and the knee was baked, to limber it; that influenza pneumonia caused his death and that the injury did not in any way contribute to it; that he was apparently well and ready to be discharged

when he developed a temperature, due to influenza; that he felt certain the patient would have recovered if the influenza pneumonia had not developed.

Dr. Jacob J. Singer, a specialist in diseases of the chest, who was called in consultation February 7, 1920, testified that he found Kivish suffering from severe influenza pneumonia, with acute congestion of both lungs; that his temperature was 104 and his pulse very weak; that he was in cold sweat, was breathing heavily and was cynotic; that influenza is a disease of the human body which usually affects the lungs and produces pneumonia; that deadly toxin is produced; that the same toxin cannot be produced by injury, and that it was his opinion that whatever injuries the patient had previously suffered had no connection whatever with the cause of his death; that disease in the human body is combated by physical resistance and that this resistance is lowered by injury; that he could not say whether Kivish would have contracted influenza if he had not been injured, nor could he say whether he would have recovered if his vitality had not been lowered by the injury. Three other physicians testified that the injuries suffered by Kivish were such that they would make him more liable to succumb to influenza pneumonia.

The hospital record shows that the patient was entered for treatment for an injury to his right knee and that influenza pneumonia later developed. It shows that the patient was treated with many different kinds of drugs and medicine, some of which were administered hypodermically. It does not show that his leg was ever placed in a cast, but it does show that weights were applied to it and that it was treated by baking and massage, and that the patient suffered severely, was unable to sleep, refused to eat and complained of headache; that he had a fever above 100 January 14; that the weights were taken off his leg January 27, and that he then had a fever of 101; that he sat up in a chair for half an hour; that his fever continued

to rise, reaching 103 January 31; that the electric baker was applied to his knee continually until that day, when its use was discontinued; that deceased was aspirated February 5 at 3:00 o'clock P. M.; that five hours later he had a fever of 105, and that he died at 3:30 P. M. February 7.

The abstract of record shows no objection made to the testimony relating to statements made by the deceased. These statements were hearsay and incompetent, but being received without objection they are to be considered and given their natural probative effect as if they were in law admissible. (*Ascher Bros. Amusement Enterprises* v. *Industrial Com.* 311 Ill. 258; *Diaz* v. *United States*, 223 U. S. 442, 32 Sup. Ct. 250; *Damon* v. *Carroll*, 163 Mass. 404, 40 N. E. 185.) In proceedings under the Workmen's Compensation act the rules respecting admission of evidence are the same as those that prevail in common law actions for personal injuries. The procedure, only, is different. (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43.) If attorneys in presenting these cases to the Industrial Commission would confine themselves to competent evidence, the commission, which is usually composed of laymen, would be materially aided in their effort to reach a proper conclusion and the record would not be incumbered with a lot of immaterial matter.

Notwithstanding the learning and skill of the physicians attending Kivish at the time of his death, it is not possible to determine definitely and absolutely whether the injuries received by him were the proximate cause of his death. Two things are certain: one, that he was severely injured in the line of his employment and that he never recovered from those injuries; and the other, that he went to the hospital for treatment in compliance with the demands of the insurance company which was paying the compensation due the injured employee from his employer. We have held that while the employee must submit to proper treatment at the request of the employer or forfeit his right to compen-

sation, the employer is, on the other hand, liable for the consequences of a surgical operation to which the injured employee submits in compliance with the employer's demand. (*Mt. Olive Coal Co.* v. *Industrial Com.* 295 Ill. 429; *Joliet Motor Co.* v. *Industrial Board,* 280 id. 148.) It is not uncommon for pneumonia to develop in a person who has suffered a serious injury to the thorax, and when a healthy man, crushed and bruised as Kivish was, develops pneumonia while confined to his bed by reason of his injuries and dies before the injuries to his chest have healed, it is natural and reasonable to conclude that his death is the result of such injuries. (*Lumaghi Coal Co.* v. *Industrial Com.* 305 Ill. 475.) It is the opinion of Dr. Empson, the company surgeon who treated the injured employee for nine months, that he was so severely injured that it was unlikely that he would ever recover from the effects of his injuries. No man knows whether Kivish would have died if he had not contracted influenza. Perhaps this disease further weakened the patient's powers of resistance, but whether the pneumonia developed because of the injuries or because of the influenza, or the patient succumbed to pneumonia because of his weakened condition due to the injuries, or to influenza, is not capable of demonstration. The injured employee was severely crushed by a fall of coal. He never recovered from his injuries. He continually spat blood, which indicated internal injury. He grew weaker from the time he was injured until he died. January 8 he was placed in the hospital at the request of the insurance company that had assumed the obligation of the employer. The treatment he was given was severe and he suffered great pain. According to the hospital records he developed fever six days after he entered the hospital. It is not contended that he contracted influenza until January 26. The fever shown by the hospital chart January 14 must have been due to infection or some other cause arising out of his injured condition. The whole record con-

sidered, we are convinced that the death of Kivish was caused by the injuries received by him while in the employ of defendant in error and that plaintiffs in error are entitled to an award.

The judgment of the circuit court is accordingly reversed and the cause is remanded, with directions to enter judgment for the amount justified by law.

*Reversed and remanded, with directions.*