(No. 28149.— )

Minnie Weinstein, Appellant, *vs.* Metropolitan Life Insurance Company, Appellee.

*Opinion filed March 21, 1945.*

DENT, WEICHELT & HAMPTON, of Chicago, for appellant.

HOYNE, O'CONNOR & RUBINKAM, and ECKERT & PETERSON, (NATHANIEL RUBINKAM, MELVIN L. GIBBARD, and OWEN RALL, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Minnie Weinstein, brought an action in the circuit court of Cook county against the defendant,

the Metropolitan Life Insurance Company, to recover the proceeds of three policies for $1500, $8500 and $5000, respectively, issued in 1937 to her husband, Abraham Weinstein, in which she was named beneficiary. At the close of all the evidence, defendant's motion for a directed verdict was denied. A jury returned a verdict of $1500 in plaintiff's favor. Her motion for judgment notwithstanding the verdict was allowed as to an additional $5000, and her motion for a new trial was overruled. Judgment was entered in favor of plaintiff for $7800, representing the proceeds of the first and third policies and accrued interest amounting to $1300. Upon appeal, the Appellate Court for the First District reversed the judgment and remanded the cause, with directions to enter a judgment for $1500 on the verdict. (*Weinstein* v. *Metropolitan Life Ins. Co.* 323 Ill. App. 70.) Plaintiff's petition for leave to appeal has been allowed, and the record is here for a further review.

The essential facts are uncontroverted. In February, 1937, Abraham Weinstein, then forty-one years of age, suffered a dizzy spell while playing handball, and complained of chest pains which, he stated, were relieved by belching, after eating certain types of food. Plaintiff urged her husband to have a medical examination. Weinstein complained to Dr. Howard Lenn, who recommended Dr. Abraham A. Brauer. The latter, who made an examination a few days later, diagnosed his difficulty as intercostal myalgia, namely, soreness of the rib muscles, and recommended a diet free from fried foods. On March 30, 1937, Weinstein applied to defendant for a policy insuring his life for $1500. As part of the application, he was required to and did answer a question, "18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick and names of physicians," to which Weinstein answered "No." The policy was executed on May 1, 1937.

September 20, 1937, Weinstein and plaintiff, his wife, visited the Mayo Clinic in Rochester, Minnesota, where he was examined September 21 and 23. Dr. M. J. Anderson, of the clinic, testifying by deposition, stated that Weinstein complained of distress in the epigastrium, or stomach. Dr. Anderson testified further that he advised Weinstein the clinical examination disclosed evidence of duodenal ulcer and infected tonsils. He explained the nature of a duodenal ulcer, and dietary treatment, similar to what is described as a "Sippy diet," (named for the late Dr. Bertram W. Sippy of Chicago,) was recommended for the ulcerous condition. The witness added, "Dietary treatment should be given a thorough trial in an ulcer such as this before resorting to surgery." October 5, Weinstein applied to defendant for $8500 additional insurance, and, on October 10, appeared before its medical examiner. In answering questions contained in the application, Weinstein declared that he had never been an inmate of a hospital, sanatorium, asylum or cure, either for observation, examination or treatment; that he had never had any ailment or disease of the stomach or intestines; that he had not consulted a physician for any ailment or disease, and that he had not, in the last five years, consulted, or been treated by, any clinic, hospital, physician, healer or other practitioner. From his second application it appears that, in 1937, he also obtained a policy from another insurance company for $10,000. A policy for $8500 dated October 18, 1937, was delivered to Weinstein on October 21.

October 18, 1937, Weinstein visited Dr. Howard Lenn in Chicago and informed him of his visit to the Mayo Clinic. October 19, he entered Mt. Sinai Hospital where a tonsillectomy was performed by Dr. Lenn. November 19, Weinstein applied to defendant for a third policy insuring his life for $5000, and, because the application shortly followed the issuance of the second policy for $8500, no physical examination was required. In his ap-

plication, in addition to answering negatively similar questions to those described, Weinstein stated, in writing, that he had not consulted any physician or suffered any illness, disease or injury since the date of his application for the second policy. The third policy for $5000 was issued on December 15, 1937. Weinstein died April 1, 1938, the immediate cause of death being angina pectoris.

All three policies were identical, except as to dates and amounts, contained the usual statutory provisions, and included what is known as a two-year incontestable clause providing that each policy "shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue, except for nonpayment of premiums." Each likewise provided that the policy and attached application constituted the entire contract between the parties, that all statements made by the insured would, in the absence of fraud, be deemed representations and not warranties, and that no statement would avoid the policy or be used in defense of a claim thereunder unless contained in the application.

This cause has been before a jury three times. The first trial resulted in a verdict of $1500 for plaintiff. Her motion for a new trial was granted. A second jury returned a verdict of $7500 in plaintiff's favor. Defendant's motion for a new trial was allowed, and the third trial followed. Defendant no longer challenges the jury's verdict for $1500 in plaintiff's favor with respect to the first policy. As to the remaining two policies, the principal defense urged is that the negative answers contained in the application with respect to ailments suffered, and medical, clinical and hospital attention received, were knowingly false, were material to the risk, and that the evidence amply supported the verdict of the jury. Accordingly, defendant maintains that the trial court erred in entering judgment *non obstante veredicto* for $5000 on the third policy, and that the Appellate Court properly reversed the judg-

ment and remanded the cause, with directions to enter judgment on the verdict. . Conversely, plaintiff contends that when established legal principles are applied to the evidence, taken most favorably to the defendant, none of the answers in any of the applications is false, in contemplation of law, because the events were so trivial and inconsequential it was unnecessary to mention them in the applications. She adds that, assuming the answers, or some of them, to be false, defendant still has failed to make out a defense, without proof of the materiality of the unmentioned or undisclosed facts. Specifically, she asserts that Weinstein died of heart disease, and that defendant has made no effort to prove that his health or insurability was actually affected by any stomach condition, or impaired by the tonsillectomy; that, consequently, no defense having been made under the evidence, the trial court committed error when it denied her motions for judgment *non obstante veredicto* as to the policy for $8500 and for a new trial, and that these errors were compounded when the Appellate Court reversed the order allowing plaintiff's motion *non obstante veredicto* with respect to the policy for $5000.

A motion for judgment *non obstante veredicto* has the same effect as a motion for a directed verdict. The question of law presented to the court upon either of such motions is whether, when all the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove any necessary element of his case. If there is any evidence which, standing alone, tends to prove the material allegations of the complaint, or to establish a defense, the motions should be denied. This requires a consideration of the evidence but precludes any examination of its weight in order to determine its preponderance. The question of whether the evidence preponderates against the party in opposition

to the motion, or against the verdict, is tested by a motion for a new trial. (*Merlo* v. *Public Service Co.* 381 Ill. 300; *Walaite* v. *Chicago, Rock Island and Pacific Railway Co.* 376 Ill. 59; *Nelson* v. *Stutz Chicago Factory Branch, Inc.* 341 Ill. 387.) The decisive issue thus presented is whether there is any evidence in the record, which, when viewed in its aspect most favorable to defendant, constitutes proof of materiality of any of the negative answers made by Weinstein. A determination of this question is, in turn, dependent upon familiar legal principles pertaining to representations. A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and material to the risk, and which the insured states, knowing it to be untrue, in an attempt to deceive, or which he states positively is true without knowing it to be true and which has a tendency to mislead. (*Hancock* v. *National Council of the Knights and Ladies of Security*, 303 Ill. 66; *United States Fidelity and Guaranty Co.* v. *First Nat. Bank*, 233 Ill. 475.) Misrepresentations will avoid a policy of life insurance if they are, in fact, false and material to the risk, even though the applicant acted through mistake or in good faith. (*Western and Southern Life Ins. Co.* v. *Tomasun*, 358 Ill. 496.) Whether statements of an applicant as an inducement to a contract,—here a representation,—are material is determined by the question whether reasonably careful and intelligent men would have regarded the fact stated as substantially increasing the chances of the event insured against, so as to cause a rejection of the application or different conditions. (*Hancock* v. *National Council of the Knights and Ladies of Security*, 303 Ill. 66.) The materiality and truth or falsity of representations are questions of fact to be resolved by a jury. (*Spence* v. *Central Accident Ins. Co.* 236 Ill. 444; *Manufacturers and Merchants' Mutual Ins. Co.* v. *Zeitinger*, 168 Ill. 286.) In short, does the evidence afford a legitimate basis for

the jury's conclusion that Weinstein's representations were so material as to affect the issuance of the policies?

Here, plaintiff does not deny the tonsillectomy nor the visits to Dr. Brauer and the Mayo Clinic. The additional testimony recounted concerning the attention received by Weinstein at the Mayo Clinic discloses that he was informed of at least a possibility of a duodenal ulcer for which a specific diet was recommended. The visit to Mayo's was followed by an application for insurance. Shortly after a visit to a physician in Chicago, and subsequent to a tonsillectomy, he applied to defendant for a third policy. Weinstein's medical treatment and clinical observation, to put it mildly, made him "insurance-conscious." Applying the firmly established law to the evidence adduced, an adequate basis was presented for determination by a jury of the materiality of his answer that he had not attended any clinic, that he had not suffered any stomach ailment and, further, had not consulted a physician for any disease. The obvious purpose of eliciting information concerning examination at a clinic or by a physician is to afford an insurer an opportunity of ascertaining pertinent medical data as to the current physical condition of an applicant to supplement information already in its files. Knowledge thus obtained effectively places an insurer in a position to decide what type of policy, if any, may be issued and the premium to be charged. This important provision should not be subject to defeat, at the whim of an applicant, by his mere denial of the visits. An insurer, informed even of a possibility of duodenal ulcer, would hardly ignore the information and issue a standard insurance policy covering the life of one likely to be so afflicted. It follows that an insurer is entitled to a truthful answer with respect to observation and examination at a clinic or by a physician, and failure of an applicant to acquaint it with this information may well be material to the risk. That an ailment or malady, knowl-

edge of which an applicant withheld from an insurer, was not actually the cause of death is not decisive against a finding of materiality. Materiality to risk may exist notwithstanding proof of fatality owing to another cause. In the present case, the jurors evidently believed the false answers to the questions were material to the risk involved, and, upon a consideration of the entire record, we cannot say the verdict was manifestly against the weight of the evidence. This conclusion is particularly justified where plaintiff's claim has been submitted to three juries. There should be an end to the controversy in so far as the facts are concerned. *Hinchliff* v. *Rudnik,* 212 Ill. 569.

As an additional reason for claiming the third policy for $5000 should not be avoided because of the negative answers contained in the application, plaintiff insists that these answers were not, in fact, those of Weinstein, but were made and written in at its home office by defendant. On November 12, 1937, defendant, by S. Milligan, its second vice-president, addressed a letter to Weinstein offering to issue an additional policy for $5000. This letter reads, in part, "Frankly, we have a very fine picture of you here as an insurance risk. You have qualified for our Whole Life Plan, and many men who are eligible for standard policies are not able to obtain policies on this select Plan. You measure up in every way to the high standards we have set for the Whole Life Plan. These high standards, of course, react to the advantage of those men who are able to qualify for a Whole Life policy, since they mean a reduction in premiums. In view of these facts, we are willing to consider you for an additional policy for $5000 of Whole Life insurance without the need for any further evidence of insurability. All we require to put the additional contract in force for the protection of your family is your O.K. and your check for the necessary premium." Plaintiff argues, first, that there was an offer by defendant and an acceptance by Weinstein which

was not conditioned upon an application because the insurer copied Weinstein's answers in his second application and placed reliance upon them. The evidence is uncontradicted that, at the time the application for the policy for $5000 was signed by Weinstein, the questions were read to him by the agent and that he answered them, as indicated in his application. Under these circumstances, the answers were those of Weinstein. The glowing statements contained in the letter of November 12 were apparently based upon defendant's mistaken belief that the answers contained in the application for the policy for $8500 were truthful, and that no information material to the risk had been withheld by Weinstein. Manifestly, no such letter would have been written had the insurer been in possession of the information to which it was entitled.

Finally, plaintiff contends that the trial court committed reversible error in giving to the jury, at the request of defendant, instruction No. 9: "The court instructs the jury as a matter of law that it is the actual condition of health of the assured which controls and not his apparent health or what he or anyone thought his health to be." The instruction, as plaintiff asserts, was not a correct statement of the law, for the reason that it declares the actual condition of Weinstein's health at the time the application was signed is decisive, irrespective of the apparent condition of, or the opinions of himself and others concerning, his health. The pleadings did not make the issue presented by, and the case was not tried upon the theory of, this instruction. Instruction No. 9 was, however, abstract in form and did not direct a verdict. By eleven other instructions, the jury admittedly was advised that the false answers made by Weinstein to questions would not avoid the policies unless defendant proved, by a preponderance of the evidence, that the answers were material to the risk, that the applicant knew his answers were false, and that he made them with actual intent to deceive

the insurance company. (Vance on Insurance, 2d ed. sec. 106, p. 359.) The jury was thus fairly and adequately instructed, apart from the one challenged instruction, and the evidence was sufficient to sustain the verdict. Indeed, the evidence proclaims that Weinstein actually knew his health was impaired and, nevertheless, made false answers to defendant's interrogatories with respect to his physical condition and visits to doctors and clinics. Under these circumstances, we cannot say that the isolated instruction assailed, although erroneous, was so prejudicial as to have effected a change in the jury's verdict. In short, the evidence against plaintiff's claim and in favor of defendant was of so strong a character that any jury undoubtedly would have returned the same verdict whether instruction No. 9 had been given or refused. Fortifying this conclusion is the fact that the cause has been tried three times, the juries, in two instances, namely, upon the first and third trials, having reached the same result, and the verdict of $7500 upon the second trial was evidently a compromise verdict. On the argument in the Appellate Court it was stated that "the new [third] trial was allowed because the amount of the verdict was inaccurate in any view of the case." (323 Ill. App. 70.) Substantial justice has been done between the parties, and the litigation should now terminate, particularly where a fourth trial would serve no useful purpose but would merely postpone the inevitable result. When all the facts and circumstances are considered, the conclusion is inescapable that the jury was not misled by instruction No. 9 but, instead, clearly understood the issues to be decided.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*