(No. 31223.

ANNABELL MARSHALL, Appellee, *vs.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

*Opinion filed January 18, 1950.*

ECKERT, PETERSON & LEEMING, of Chicago, (OWEN RALL, WILLIAM A. CANNON, and WALTER P. STEFFEN, of counsel,) for appellant.

ALFRED ROY HULBERT, and DAVID H. GREENBERG, both of Chicago, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff, Annabell Marshall, as beneficiary, filed suit in the superior court of Cook County, on two policies of life insurance issued to her husband by the defendant company. The cause was tried before a jury and a verdict returned in her favor on both policies. Motions for a directed verdict, in arrest of judgment and for a new trial being overruled, judgment was entered in the sum of $8900,

the amount of the two policies, plus interest. On appeal to the Appellate Court the judgment was affirmed and leave to appeal was granted by this court.

The defendant, appellant here, assigns the following errors: (1) That it was error to refuse to hold, as a matter of law, that the insured's failure to declare a certain treatment of December 30, 1943, was a material misrepresentation so as to avoid both policies. (2) That the application amendment, dated April 4, 1944, was erroneously construed as making the application speak as of its own date, whereas it properly spoke at the date of the amendment, so that the confirmed diagnosis of heart disease avoided the second policy. (3) That the instructions given for plaintiff-appellee were erroneous.

The principal facts are undisputed. On March 3, 1944, the insured applied for a $6000 policy of insurance from defendant, and on the following day was examined and questioned as to his health by the company doctor, the data being recorded on part "B" of the application. The questions and answers pertinent here are as follows: No. 11(b) "Have you ever had any ailment or disease of the Heart or Lungs?" Answer: "No." No. 12(g) "Have you consulted a physician for any ailment or disease not included in your above answers?" Answer: "Yes. Influenza—three or four days, January, 1940—mild—Good results. Dr.?" No. 13 "What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years? If none, so state." Answer: "None."

At the time the insured was examined the company's doctor was required and did answer the following questions on the application: No. 17. "Is there any arteriosclerosis? (If present, state degree.)" A. "No." No. 20 "Did you, by thorough physical examination and inquiry, find any evidence of disease or impairment of the heart (before or after exercise)? If murmur is present, describe

in detail, giving location, time and transmission, position of apex beat and degree of hypertrophy." A. "No."

Thereafter, on March 10, 1944, while the insured was awaiting the delivery of the first policy, he was stricken, and a Dr. Miller attended him and diagnosed his illness as strep throat. He was advised his heartbeat was not 100 per cent and it was suggested he have a cardiogram. He did and it was confirmed he had a serious heart disorder. On March 22, 1944, after confirmation of the heart condition, the first policy was delivered by the company's agent, who, at the time, attempted to sell the insured an additional policy of $5000, which, by compromise, was reduced to a $2000 policy. No application was filled out for this second policy. On April 4, 1944, the second policy was delivered together with a photostatic copy of the application made for the first policy and a document designated as "APPLICATION AMENDMENT." Pertinent parts of this document read as follows:

"To the Metropolitan Life Insurance Company:
"The undersigned hereby amends the application for Life insurance made to your Company on the date stated above; to make it the application for the above numbered policy on the Whole Life Paid Up at Age 85 plan with Disability Waiver and War-Aviation Prov. in the amount of $2,000 without affecting its use as the application for Policy No. 14 977 598A.
"These amendments and declarations are to be considered as a part of the said application and subject to the agreements, covenants, and statements therein contained. The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance. The said application as amended, is correct and true, and I hereby ratify and confirm the statements therein made as of the date hereof.
"Signed and dated at Chicago this 4 day of April, 1944."

After the delivery of the two policies, the insured died February 4, 1946, of pulmonary embolism, and the company contends that material misrepresentations were made in answer to the questions as appear in the written applica-

tion for insurance, together with amendments, which avoids both policies.

The record discloses that on December 30, 1943, prior to the application for insurance, the insured, Frank H. Marshall, after an evening of drinking liquor and eating with two other men, became ill with considerable disturbance to his stomach, which caused nausea and vomiting. He received medical aid from Dr. H. Hoyt Cox, who left a prescription at his home to be filled and remarked at the time, "You might have had a gall bladder attack." The insured recovered by the next day. He received no further treatment from the doctor at this time and experienced no further symptoms as above described.

On the trial the defendant company introduced, without objection, an office record card from the office of Dr. Cox, bearing the insured's name and showing an entry dated December 30, 1943, with the notation, "gall bladder attack." Dr. Cox testified that the card was his office record, but that he had no recollection of the case whatsoever; that the card did not refresh his recollection; that it was not made by him, but by his nurse or secretary; that he did not remember the call or what symptoms he observed, nor what examination he made, and that he had no recollection of the events whatsoever; that if the symptoms present were those of a gall-bladder attack, then it was possible that said symptoms might possibly result from a heart disorder; that if it was, in fact, a gall-bladder attack, it would not necessarily be damaging to the constitution and might come and go without serious consequences.

Two other doctors who had attended the insured in connection with the later-discovered heart disease testified that if Dr. Cox had found symptoms of a gall-bladder attack, those same symptoms might be connected with heart disease, but that if the cause of the symptoms was actually a gall-bladder attack, it might have no bearing on heart disease, and that one brief case of vomiting and nausea,

whether caused from a gall-bladder attack or from liquor and food, would not necessarily indicate heart disease.

Dr. Albert W. Bromer, assistant medical director of defendant company and Dr. Harold W. Dingman, employee of the Continental Assurance Company, testified that gall-bladder attacks are indicative of heart disease in persons of the age of the insured, fifty-two years, and that a declaration of such an attack by Marshall, the insured, as occurring on December 30, 1943, would have required further investigation or rejection; and that if further investigation had been made the heart condition would have been discovered and the application rejected.

The crucial question presented as to the first policy is whether the failure of the insured to declare the illness of December 30, 1943, was, as a matter of law, a material misrepresentation so as to avoid the policies. As to the second policy the question presented is whether the application, as amended in the application amendment of April 4, 1944, spoke only as of that date so as to constitute a material misrepresentation of insured's medical history on that date.

It is undisputed that Dr. Cox made a call on insured on December 30, 1943, and that insured failed to declare it in his application on March 3, 1944. It would seem, therefore, that such a failure to declare was a misrepresentation. We find, however, that section 154 of the Insurance Code (Ill. Rev. Stat. 1947, chap. 73, par. 766,) provides in this regard: "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company."

Appellant contends that the evidence here establishes the materiality of the misrepresentation to the acceptance of the risk, as a matter of law, and that a verdict in its favor should have been directed. It will be observed that

the question presented by a motion for directed verdict, and by this contention, is whether, when all the evidence is considered in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove any necessary element of his case, and if there is any evidence which, standing alone, tends to prove the material allegations of the complaint, the motion should be denied. (*Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571.) Appellant here sets up materiality as an affirmative defense, and therefore the inquiry here is whether there is any evidence which tends to prove the negative of that defense. To support this contention appellant urges that there was established a diagnosis of gall-bladder attack by Dr. Cox on December 30, 1943, and its chief reliance to support this position is in the record card of Dr. Cox, which appellant urges was competent to prove the diagnosis. The cases of *People* v. *Harrison*, 384 Ill. 201, and *People* v. *Greenspawn*, 346 Ill. 484, are cited, where it was held, in substance, that a record may be admitted where the witness testifies that he has no independent recollection of the matters contained in it, that his memory is not refreshed by it, but that he knows it was an accurate recording of the facts contained therein when it was made. Under that rule the record here would hardly be admissible as Dr. Cox denied any recollection either of the events, the facts recorded, or even who made the card and had no recollection of the case whatsoever. We hardly see the materiality of that question since the admissibility was not and is not controverted, it being admitted without objection. Being so, the card is entitled to what natural probative weight it carries. *Knudson* v. *Knudson*, 382 Ill. 492; *Kivish* v. *Industrial Com.* 312 Ill. 311.

Appellant contends the evidence fully discloses a diagnosis of gall-bladder attack on December 30, 1943, and whether that diagnosis was correct or not, disclosure of it would have prevented issuance of the policy. To support

the first claim appellant points to the record card chiefly, and contends that the correctness of the entry there is corroborated by the ingredients prescribed by Dr. Cox in the prescription he left. The evidence pertaining to the card consisted, in substance, of Dr. Cox's statement that he remembered nothing whatsoever about the case and that he did not make the entry on the card. To give any weight to such an entry when there is no opportunity for cross-examination as to the basis for it is obviously contrary to fundamental principles of the law of evidence. The prescription was not shown to have been given for gall-bladder attack and the only testimony in regard to that is that its ingredients were suitable for treatment of that ailment as well as other ailments. There was no evidence whatever of what symptoms Dr. Cox found on which a diagnosis of gall-bladder attack could be based. The evidence clearly shows the illness was brief and did not recur. Dr. Cox and two other medical witnesses for appellant testified that no differentiation between ordinary stomach upset and gall-bladder attack could be made on symptoms consisting only of nausea and vomiting. The evidence shows that nausea and vomiting alone are not symptoms of serious disorder.

The position of appellant seems to be based on the premise that the evidence shows a diagnosis by Dr. Cox of a gall-bladder attack, that the symptoms on which that diagnosis was made might have been actually manifestations of the heart disease, and that the disclosure of the diagnosis would have apprised it of the symptoms and thereby have caused it to reject the application. This reasoning is somewhat faulty when applied to the evidence here. First, there is no evidence of any symptoms indicative of gall-bladder attack. Second, the fact of diagnosis is dependent on the credit to be given to an office record card, which was incompetent and inadmissible, except for appellee's failure to object, for the reason Dr. Cox denied any recollection of the facts purportedly recorded on it,

or of the origin of the information shown, and testified he did not make the record. Under this state of the evidence it is entitled to little or no weight. That he said on the occasion in question, "He might have had a gallbladder attack," is of little strength in establishing a definite diagnosis.

We have examined the evidence and it is unnecessary to follow it further in this respect. The cases relied upon by appellant offer little support to its position. Principally relied on is the case of *Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571, where, as here, successive policies of insurance were issued, the first application containing a misrepresentation analogous to the one here. The jury found for the plaintiff on the first policy and on appeal to this court that finding was not controverted or disturbed. The decision in that case was directed solely to the subsequently issued policies which were issued on a second application.

The appellee contends that the question of materiality of the misrepresentation in question was one properly for the jury; that the term "material" excludes matters that are "immaterial," and that temporary disorders, not of a serious nature are immaterial to the questions and answers involved here. In 29 Am. Jur. 455, it is said, "Mere temporary ailments or affections, not of a serious or dangerous character, which pass away and are likely to be forgotten because they leave no trace in the constitution are not to be regarded as diseases or serious illnesses within the meaning of a life insurance policy and this is true even though the illness was, at the time, considered serious."

An undisclosed single visit to a doctor for an undiagnosed complaint was held to present a jury question as to materiality in *Zogg* v. *Bankers Life Co.* 62 Fed. 2d 595. Failure to disclose chills and a visit to a hospital for a check-up was held immaterial to the risk in *Aetna Life Ins. Co.* v. *Hub Hosiery Mills,* 170 Fed. 2d 547. In *Hancock* v. *National Council of Knights of Security,* 303 Ill. 66, this

court said, "Whether statements of an application made as incidental and inducement to a contract are material may be the subject of evidence and raise questions of fact unless they are of such a nature that all persons would agree that they are or are not material." In *Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571, it was held that the materiality of misrepresentations in an insurance application is a question of fact for the jury. Here, there was evidence from which the jury could reasonably conclude the misrepresentation was immaterial either to the risk or to the company's acceptance of it and therefore it was properly left to the jury.

As to the second policy, appellant contends that the application amendment, signed by the insured on April 4, 1944, constituted an unambiguous affirmation that on that date his health was the same and that the answers given on the original application were, in effect, redeclared in the application amendment as being true and correct on April 4; that such statements, made on April 4, after confirmed diagnosis of and treatment for a serious heart condition, were manifestly proved to be false and material as of April 4, and that therefore a verdict on the second policy should have been directed for appellant.

It is conceded that the insured, on April 4, had and knew he had a serious disease of the heart and that a disclosure of it would have prevented the issuance of the second policy. Appellee's position is that the only purpose of the application amendment was to effect a change in the amount of insurance and was not a declaration that the insured's status was unchanged since the date of the application. The application amendment recites that the original application is amended so as to stand as the application for the second policy without affecting its use as the application for the first policy. Then it states, "The said application, as amended, is correct and true, and I hereby ratify and confirm the statements therein made as

of the date hereof." The controversy revolves around this sentence. Neither party cites any case which bears on the construction of this sentence.

To the insured layman, the words of the amendment said that the application spoke as of its own date and also as of the date of the amendment. Alongside the application itself, the words of the amendment say, in effect, that the company is satisfied with the application of March 3, 1944, and that, on the basis of that application, the company is issuing additional insurance if the insured will authorize the application to be amended so as to apply for the additional policy. Nowhere is any inquiry made as to the changes of status since the date of the orginal application, nor is there any indication that the company wished any additional information. The insured could reasonably understand that the sum and substance of the amendment was that the company was merely increasing the amount of the insurance. This understanding is fortified by the testimony of Singer, the agent, who said without contradiction that no additional application or physical examination was made or required and the amendment was prepared by the company in its home office and forwarded with the second policy to him for delivery to the insured.

We find in the case of *Schroeder* v. *Trade Ins. Co.* 109 Ill. 157, a question somewhat analogous to the one in the instant case. There the assured had made application for insurance on certain property in February, 1878. In the application he correctly stated the property was unincumbered. In July of that year he incumbered it. In the following December, a policy was issued on the property by another company. That policy recited that the application made in February was a part of the contract, and that "any misrepresentation whatsoever in the application or otherwise" should avoid the policy. The question was presented whether the statements in the application had reference to the facts at the time they were made or to the facts at

the time the contract was consummated. We there said, "To give the adoption into a policy of an application made at some former time, the effect of a representation as to the present condition of the property insured, it would seem but fair to require that there shall be some language which will suggest to the mind the idea of representation as to present conditions, so that the assured may not, by general language of such adoption, be entrapped into the making of representations which he never designed to make." The court there held that the application spoke as of its own date and not at the date of the later policy issued upon the statements contained in it. Similar reasoning is employed as to the effective date of statements in an application in *U. S. Fidelity and Guaranty Co.* v. *State of Oklahoma,* 43 Fed. 2d 532, which cites the *Schroeder case.*

Appellant strenuously urges that the last sentence of the amendment, quoted above, makes the application speak as of April 4, 1944, when the second policy was delivered, and relies on these words, "The application, as amended, is correct and true, * * *." and says that these words are a clear statement that the application is correct and true as of the date of the amendment and that the remainder of the sentence fortifies the meaning thus expressed. The rest of the sentence is "* * * and I hereby ratify and confirm the statements therein made as of the date hereof." The only reference to the date of the amendment is in connection with the words "ratify and confirm." The insured could reasonably understand from the whole sentence that he was re-affirming the application as of its own date, and ratifying the statements then made for the purpose of increasing the amount of insurance issued thereon. The application amendment is not clear and unambiguous. It will be observed at this point that the agent of the insured was apparently more interested in selling a new policy of $5000, than getting at the true facts of the

health of the insured by furnishing him with an application to fill out, which would suggest to his mind the idea as to his present condition that he might not be penalized by general language which appeared in the original and amended application.

The agent testified, when asked what was said with reference to the application for the $2000 policy, "Well, the fact remains that I had the $5,000-policy and I wanted Mr. Marshall to take the additional five which he refused. Then I compromised with him, asked him if he would consider taking some part of it and he agreed to take the $2000." He further testified, "He didn't sign any application for the five and he didn't sign any application for the two." Under such circumstances, it seems to be clear the insured had no desire or thought of misrepresentation of material facts, and, if the amended application had been clear, his conduct warrants the inference he would have made full disclosure as to his condition if the language of the amended application had been sufficiently clear to be readily understood by him.

Appellant urges the rule stated in *Zitnik* v. *Burik,* 395 Ill. 182, that where the language in an insurance policy is clear and unambiguous, it must be taken and applied in its plain, ordinary and popular sense, and it is not to be given a distorted construction that will defeat the purpose of the contract. That is true where the language justifies such an interpretation; however, we find the well-settled rule that where the language of an insurance policy is reasonably susceptible to more than one interpretation, that construction which favors the insured will be adopted. (*Roth* v. *Kaptowsky,* 393 Ill. 484; *Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136; *Mammina* v. *Homeland Ins. Co.* 371 Ill. 555.) This latter rule seems to be applicable here and the trial court did not err in refusing to direct a verdict as to the second policy.

Appellant contends the instructions given for appellee were erroneous. We find from a careful examination of the instructions that, when taken as a series, they adequately instruct the jury as to the issues involved and in them we do not find reversible error.

This case presents the usual difficulty in the construction of language used in insurance policies and other necessary papers used therein to complete the contract. We are of the opinion, after a careful examination of the language used in the amended application, in connection with the first application here, that it is reasonably susceptible to more than one interpretation. Applying this rule, the judgment of the Appellate Court is correct, and is affirmed.

*Judgment affirmed.*