(No. 39196.—

WALTER MOONEY, EXR., Appellant, *vs.* UNDERWRITERS AT LLOYD'S, LONDON, Appellee.

*Opinion filed Nov. 19, 1965.—Rehearing denied Jan. 24, 1966.*

Underwood and Schaefer, JJ., dissenting.

James A. Dooley, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago, (N. S. Boardman, F. L. Tozer, and J. M. Smyser, of counsel,) for appellee.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Walter Mooney, executor of the estate of Barnett Faroll, deceased, brought action in the circuit court of Cook County against Underwriters at Lloyd's, London, on a policy of accident insurance. He recovered a verdict and judgment for $50,000. The judgment was reversed on defendant's appeal to the appellate court (*Mooney* v. *Underwriters at Lloyd's, London,* 54 Ill. App. 2d 237,) and we granted the plaintiff leave to appeal to this court.

The policy was taken out by the deceased on August 21, 1952, when he was 72 years of age. By its terms it provided $250 weekly benefits for accidental disablement and $50,000 for accidental death. About a year and four months later he was struck by an automobile as he was crossing the street, incurring injuries from which he died. The insurance underwriter refused to pay and returned the premiums, on the ground that the insured had made material misrepresentations in the application. This action followed.

Allegedly untrue answers to three questions on the application are relied upon to avoid liability. The first question asked "Is your sight in any way impaired or have you ever suffered from any affliction of the eyes?" to which the answer "No" appeared. The second question inquired "Have you any physical defect or infirmity?" The answer again was "No." The third question read "Are you now perfectly well and in sound health?" The answer "Yes" appeared.

Medical testimony disclosed that on May 17, 1952, the insured had an operation on his left eye for the removal of a cataract. He was fitted with glasses and by August (the month in which the application was made) he had regained a normal 20/20 visual acuity straight ahead, in that eye. The vision in the right one was around 20/200. There was also evidence that the insured suffered from a mild form of diabetes and an old peptic ulcer that had not been active for many years.

It is undisputed that the application failed to reflect Faroll's true physical condition. Plaintiff contends, however, that the misstatements were not made with intent to deceive, and were not sufficiently material in nature to void the policy. It appears that Faroll's former accident insurance expired when he reached the age of 70, and the broker through whom he had purchased it started looking for a company which would issue policies to persons over 70 years old. Upon receiving quotations from the defendant Lloyd's, the broker went to Faroll's office with a blank form of application and obtained the latter's signature thereon. He later filled in the answers to the best of his knowledge, on the basis of what he knew personally about Faroll.

There is little contention that the misrepresentations were made with intent to deceive. The issues are rather whether they were material to the risk, and if so, whether the broker was acting as agent for the insured or as agent for the insurer, so as to charge the one or the other with responsibility for them. As to the eyes, it is true that Faroll

wore glasses and suffered from cataracts. But he had re-
covered a normal straight ahead vision in his left eye. He
was active in his work as a member of the Board of Trade,
which involves buying and selling commodities by the use
of hand signals, and his business acquaintances called as
witnesses had never noticed anything unusual about his eye-
sight. His personal physician testified he had found no
activity of the insured's ulcer during the ten or twelve years
before the accident, and that the diabetes was in a very mild
form not uncommon in people over 70 years of age. Those
who draw and submit these broadly phrased questions can be
presumed to know that few persons over 70 are "perfectly
well," and if ailments as common as those of the insured
substantially enhance the chance of accidents, more specific
questions would be expected to be addressed to such appli-
cants. The application was not for life insurance or health
insurance. The risk insured against was limited to death
or disablement caused solely by accidental means. Under the
facts and circumstances in this case we believe the jury
could reasonably infer that the conditions misrepresented
were not material and were too indirect and remote to sub-
stantially increase the chances of accident. The materiality
of false representations in an application for insurance is a
question of fact for the jury, and a verdict should not be
set aside if there is any evidence which, standing alone,
tends to support it. (*Marshall* v. *Metropolitan Life Ins. Co.*
405 Ill. 90; *Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill.
571.) Such is the case here. The appellate court erred in
holding as a matter of law that the materiality of the mis-
representations was proved.

Defendant contends the trial court committed several
errors in the conduct of the trial. It is objected that after
five days of trial the plaintiff was permitted to amend his
reply by denying his intestate made false and fraudulent
statements in the application. It appears that after the
plaintiff had rested his case defendant announced an inten-

tion to read to the jury as admitted those portions of the affirmative defense so alleging, to which the plaintiff had not replied. The court then granted the plaintiff's request to amend his reply in order to "conform the pleadings to the proof." Defendant objects, arguing that there was no proof the conditions of ill health did not exist when the application was made and that allowing the plaintiff to deny it after the close of his evidence in no way conformed the pleadings to proof. There is no merit in the contention. There was proof in the record that Faroll had neither personally "executed" the application nor made false and fraudulent statements. The rule is well settled that a trial court may allow amendments in any matter which may enable the plaintiff to sustain the claim intended to be brought. See section 46 of the Civil Practice Act, Ill. Rev. Stat. 1963, chap. 110, par. 46.

It is further argued that defendant should have been permitted to inform the jury of the prior "admission" by failure to deny. It is true that admissions in pleadings are proper evidence (*O'Brien* v. *Brown*, 403 Ill. 183,) that admissions may be implied by silence under certain circumstances (*Dill* v. *Widman*, 413 Ill. 448,) and that a failure to reply to an affirmative defense is an admission of the facts alleged therein. (*Lundberg* v. *Gage*, 22 Ill.2d 249.) Here, however, the defendant introduced evidence in support of its allegations that misrepresentations had been made on the application form and that they had been made by the insured. The rule is that "Where, in the absence of a reply, defendant introduces evidence to prove an affirmative defense, the failure to file a reply is waived and the absence of a reply does not constitute an admission." (*Sottiaux* v. *Bean*, 408 Ill. 25; *Cienki* v. *Rusnak*, 398 Ill. 77.) Under the circumstances of this case there was no prejudicial error in refusing to permit defendant to present and argue the alleged admission to the jury.

Defendant also complains that the trial court improperly

submitted to the jury the issue of whether the broker was an agent of the insured or an agent of the insurer. Examination of the record shows that the issue was in the case and that evidence was introduced relating to it. The contention cannot be accepted. Nor do we find merit in the defendant's objections to the giving and refusal of various other instructions. We have examined defendant's arguments but find them too insufficient to warrant further discussion.

The appellate court erred in reversing the judgment of the circuit court. Its judgment is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed; circuit court affirmed.*

Mr. JUSTICE UNDERWOOD, dissenting:

The majority state that there was sufficient evidence adduced at the trial to justify submitting to the jury the questions of materiality of the misrepresentations made in the policy application and whether the broker was acting as agent for the insured or the insurer. With these propositions I cannot agree.

It is undisputed that Faroll had suffered from a cataract on his left eye and underwent an operation for its removal. He had recovered, at the time the application for the instant policy was made, 20/20 corrected visual accuity in that eye but only concerning straight-ahead vision. His right eye was around 20/200, the equivalent of economic blindness. (See regulations issued pursuant to the statute (Ill. Rev. Stat. 1963, chap. 23, par. 702.).) In my judgment, failure to divulge his eye afflictions pursuant to the quite specific interrogatory with regard thereto amounts to a material misrepresentation as a matter of law. (See *Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571, 577.) To state the proposition that failure to apprise the insurer of serious eye affliction in an application for accident insurance does not materially affect the risk sought to be imposed upon the insurer sufficiently demonstrates its incompatibility with re-

ality. The application here inquired: "Is your sight in any way impaired or have you ever suffered from any affiliation of the eyes?" The answer was "No", despite the undisputed seriously impaired vision. Under the circumstances here it seems to me unwarranted to charge the insurer with liability because, as the majority suggests, it failed to ask more specific questions.

It is not necessary, moreover, that the misrepresentations be made with intent to deceive, and, although it taxes one's credulity to believe that a broker who knew an applicant socially for 18 years and who had obtained prior insurance policies for him did not in fact know of his eye afflictions and intend to deceive the insurer by stating in the application that there were none, it is sufficient under the law that the misrepresentations materially affect the risk involved. (*Campbell* v. *Prudential Ins. Co.* 15 Ill.2d 308.) In my judgment the opinion of the appellate court adequately disposes of the question of materiality.

The majority pass easily over the question of agency by stating that "[e]xamination of the record shows that the issue was in the case and that evidence was introduced supporting it," thus concluding that the inquiry was properly submitted to the jury. Examination of the evidence in this record on the issue of agency in my judgment compels the conclusion that, as a matter of law, the broker was acting as agent for the insured. Reference to Supplee's evidence deposition itself establishes that the insurer did not first set him in motion, but, rather, that he acted originally upon his own initiative. He testified that he was a "broker", defined by the Insurance Code as a person who acts on behalf of the assured (Ill. Rev. Stat. 1963, chap. 73, par. 1065.37); that he "induced" Faroll to apply for the instant policy and that he endeavored to get it for him. The only factor appearing in this record indicating that Supplee was not Faroll's agent is that he was paid his commission by the insurer. In my opinion, to assert that the payment of the commission suf-

fices of itself to take the question of agency to the jury abolishes the distinction between "agent" and "broker". Viewing the evidence on this question in a light most favorable to the plaintiff, I am nevertheless compelled to conclude that Supplee was acting as agent for the insured, and the misrepresentations cannot, therefore, be charged to the insurer.

I would accordingly affirm the judgment of the appellate court.

Mr. Justice Schaefer joins in this dissent.