CARRIE PATE, Appellee, *vs.* GUS BLAIR-BIG MUDDY COAL
COMPANY, Appellant.

*Opinion filed December 21, 1911.*

1. APPEALS AND ERRORS—*when a constitutional question is involved.* Where the trial court, in an action under the Mines and Miners act, construes sections 16 and 18 of said act as applying to certain conditions and renders judgment against the defendant which violates its constitutional rights if the statute cannot constitutionally be given such construction, a constitutional question is involved and Supreme Court has jurisdiction of a direct appeal.

2. PRACTICE—*when motion for new trial is not necessary.* The weight of the evidence in an action at law cannot be questioned on appeal in the absence of a motion for new trial, but a motion to direct a verdict raises only the legal question whether there is any evidence legally tending to sustain the verdict, and the court's action on such motion is presented for review though no motion for new trial is made.

3. MINES—*the Mines and Miners act was passed in obedience to constitutional mandate.* The Mines and Miners act was passed in obedience to the mandate of section 29 of article 4 of the constitution, which recognizes the dangerous character of the occupation of miners and requires legislation specially for their protection, and the Mines and Miners act must therefore be liberally construed.

4. SAME—*it is only physical conditions which make a working place unsafe which must be marked.* Under section 18 of the Mines and Miners act, concerning the examination of mines, it is only physical conditions which make a working place dangerous that the mine examiner is required to observe and mark. (*Dunham* v. *Black Diamond Coal Co.* 239 Ill. 457, and *Spring Valley Coal Co.* v. *Greig,* 226 id. 511, explained.)

5. SAME—*when section 18 of the Mines and Miners act does not apply.* Alleged defects in the rope haulage system in a mine, consisting of broken balance wheels, worn friction blocks and defective drums, do not affect the physical condition of the working place of a trip-hauler several hundred feet from such machinery, and they are not, as to such trip-hauler, among the dangerous conditions which the mine examiner must observe and mark.

6. SAME—*statute does not expressly require mine examiners to examine machinery.* The statute expressly requires mine examiners to be competent to examine the ventilation of a mine and the

condition of the working places, but it does not require them to know anything about, or be competent to examine, engines, machinery or other apparatus, nor does it expressly require them to make an examination thereof.

APPEAL from the Circuit Court of Jackson county; the Hon. A. W. LEWIS, Judge, presiding.

DENISON & SPILLER, JAMES H. MARTIN, and OTIS GLENN, (MASTIN & SHERLOCK, of counsel,) for appellant.

W. A. SCHWARTZ, and JOHN M. HERBERT, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee recovered a judgment in the circuit court of Jackson county against the appellant, the Gus Blair-Big Muddy Coal Company, on account of the death of her husband, Arlie Pate, and an appeal has been prosecuted directly to this court upon the ground that the constitutionality of a statute is involved.

A motion made by the appellee to dismiss the appeal was taken with the case. The action was founded upon the alleged negligence of the defendant in respect to the engine, machinery and appliances known as the "rope haulage system," whereby cars loaded with coal were hauled through certain entries and roadways to the bottom of the mine and were returned empty to be again filled. The declaration was based upon the Mining act, and in each of its three counts attempted to charge a willful violation of sections 16 and 18. The first count charged a willful failure and neglect to cause the dangerous places and conditions to be marked where the balance wheels of the engine had been broken and the engine was run without balance wheels; where certain friction blocks used to apply to the drums had become worn and permitted the drums to slip; where the wire rope would not wind properly on the drums but would become "balled up," and would thereby be caused to vibrate

unduly; where the clevis and pin whereby the rope was attached to the cars had become worn, so that the clevis would readily become detached. The second count charged that the defendant willfully permitted the deceased to enter the mine and become a trip-rider therein, not under the direction of the mine manager, while the dangerous conditions above mentioned, except that relating to the clevis and pin, had not been made safe. The third count charged a willful failure to have the mine examiner visit and inspect the mine and observe the dangerous conditions above mentioned and mark them as unsafe places. It is the contention of the appellant that sections 16 and 18 do not apply to the dangerous conditions mentioned, and that so applied they would be unconstitutional, because such dangers do not come within the unusual or known extraordinary hazards of the mining business which justify the enactment of laws affecting the persons engaged in that business, but are only such as are common to other occupations and as to which the law must apply equally to all persons affected. The circuit court held that those sections did apply to defects and dangers of the character mentioned and therefore rendered a judgment against the appellant, which violated its constitutional rights if the sections could not be constitutionally construed to apply to its case. The constitutional question is thus involved and the motion to dismiss the appeal must be denied.

The only assignment of error argued by the appellant is, that the court erred in refusing to exclude the evidence and direct the jury to find it not guilty. The appellant made no motion for a new trial, and it is insisted by the appellee that the question argued cannot be considered on appeal. The practice in this respect was considered in *Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589, where we said (p. 603) : "Under the practice in this State, decisions of the court made in the progress of a trial upon instructions, objections to evidence or other matters of law arising

in the cause, which have been incorporated in a bill of exceptions, may be assigned for error and reviewed by an appellate court without any motion for a new trial." The weight of the evidence cannot be questioned, but a motion to direct a verdict raises only the legal question whether there is any evidence legally tending to sustain the verdict.

The facts which the evidence tends to show are, that the appellant was operating a coal mine with a shaft about 150 feet deep, and an entry extending from the bottom of the shaft several hundred feet to a double switch, where the pit cars loaded with coal were collected, to be transported to the bottom of the shaft. In this entry was a rope haulage system, consisting of a steel wire cable about 2600 feet long and a steel tail-rope about 5000 feet long. The system was operated by a double cylinder steam engine located about 40 feet from the bottom of the shaft, containing two drums, upon one of which the main cable was wound and upon the other the tail-rope. The main cable extended from the drum, over certain sheave wheels and rollers, to the double switch, where it was connected to the front end of the trip of loaded cars to be hauled to the bottom of the shaft. Attached to the end of it was a steel chain about eight feet long, in the end of which was a ring. A single link extended about ten inches from the end of the car. The ring in the end of the chain was attached to the link by a large clevis and pin. This pin was constructed with a circular hand-hold at the upper end and a swell at the lower end, so that a person handling the clevis could take hold of the pin at the hand-hold and pull it out of the lower eye of the clevis but could not pull it out of the upper eye because of the swell at its lower end. The tail-rope extended from the other drum of the engine, along the side of the entry, over certain sheave wheels and hangers, to the end of the system, where it went over a large sheave wheel, called the "bull wheel," and back along the entry to the double switch, where it was attached to the

rear end of the trip of cars. The cars were loaded in the various working places and hauled by the drivers to the double switch, where they were stored until they could be conveyed to the bottom of the shaft. A trip consisted of from ten to fifteen loaded cars, which were under the control of a trip-rider, whose duty it was to see that the cars were properly coupled together, to connect the tail-rope to the rear and the main hauling rope to the front end of the trip, and to remain at the front of the trip and hold his hand on the clevis pin, after he connected up the main hauling rope, until he gave the signal to the engineer to start and the engineer had started the engine and tightened the rope, because there was always some jerking of the cable, which might jar the clevis and pin out of their proper position. As the trip passed the trip-rider he would take his seat on the back end of the last car on a seat provided for that purpose. There was a system of wires extending from the double switch, along the side of the entry, to the engine room, and the trip-rider, by tapping the wire at any point, could ring a bell in the engine room and thereby signal the engineer. Attached to the last car of each trip was a pronged iron rod, which dragged along the ground behind the trip. It was placed there so that if the hauling cable should become disconnected on the incline it would derail the last car and prevent the trip from running back down the incline. On the inside of the rim of the master wheel, between the two drums of the engine, were bolted, closely together, forty-five or fifty wooden friction or clutch blocks. On the outside of the rim were cogs connecting with a small pinion wheel on the crank shaft, whereby the master wheel was put in motion. The engineer, by means of a lever, could force the drums against the friction blocks and thereby cause them to revolve with the master wheel. On March 31, 1909, Arlie Pate, the deceased, was a trip-rider and had been working in that capacity for the appellant about two years. About ten

o'clock a trip, consisting of twelve loaded cars, was coupled up at the double switch. Pate connected the main hauling cable with the front end of the trip and then walked back to the rear end. The county mine inspector, John C. Duncan, was making an inspection of the mine on that day and was intending to ride out to the bottom of the shaft with Pate on this trip. He took a position on the trip-rider's seat, and Pate, while at the rear end of the trip, gave the engineer the signal to start and then took his position, standing on the tail-rope. As the trip was going up the incline, at a point about 300 feet from the bottom of the shaft, the clevis on the end of the main hauling rope became disconnected and the trip slowed down. The deceased called to Duncan to get in the clear and both jumped to the side of the entry out of danger. The rear car was about six feet up the track from them. The deceased then stepped out from the side where he was standing, towards the approaching cars, placed one hand on the end of the car and stooped over. Duncan called to him to stay in the clear, but the corner of the car struck him and knocked him down and two or three cars passed over him, causing his death.

Section 29 of article 4 of the constitution provides that "it shall be the duty of the General Assembly to pass such laws as may be necessary for the protection of operative miners, by providing for ventilation, when the same may be required, and the construction of escapement shafts, or such other appliances as may secure safety in all coal mines, and to provide for the enforcement of said laws by such penalties and punishments as may be deemed proper." This section recognizes the dangerous character of the occupation of miners and requires legislation specially for their protection. The Mining act was passed in obedience to this mandate and is to be liberally construed. Section 18 deals with the examination of mines, and concerns specially ventilation and the safety of places where men are expected to pass or to work. Tools, animals and machinery are not

mentioned. They do not come under any of the terms of this section, unless it is in the expression in clause (*a*) "or other unsafe conditions," or the expression in clause (*b*) "or any dangerous conditions" or "until all conditions have been made safe." The first two of these phrases refer expressly to working places, and the context shows that the last refers to nothing else. We held substantially to this effect in *Cook* v. *Big Muddy Mining Co.* 249 Ill. 41, where we said, on page 47: "The requirement of the statute for a conspicuous mark and a report relates only to working places and their physical condition and does not include other things." The defects alleged in the engine were the broken balance wheels and the worn friction blocks, and it is not claimed that these made the working place at the engine dangerous or affected any particular place in the mine. A mark placed at the engine, where, if at all, the dangerous condition existed, would not have answered any useful purpose, for the place of the deceased's injury was 300 feet away. The defect which prevented the rope from winding properly on the drums is not clearly stated, but if it existed it was at the drums, and a mark placed there would have been no notice to the deceased that his working place was dangerous. The clevis, with its pin, was a simple tool which had no fixed place in the mine. None of these things affected the physical condition of deceased's working place or made any particular part of the mine dangerous.

The character of the examination which the mine examiner is required to make is further indicated by the qualifications which he is required to possess and which are stated in clause (*f*) of section 7. These concern his experience in mines generating dangerous gases, his practical and technical knowledge of the nature and properties of fire-damp, the laws of ventilation, the structure and uses of safety lamps, and the laws of this State relating to safeguards against fires, from any source, in mines. Mine examiners are not required to know anything about engines, machin-

ery or winding apparatus or to be competent to examine them. The statute expressly requires them to be competent to examine the ventilation of the mine and the condition of the working places. It does not expressly require them to examine engines, machinery and other apparatus, and it is unreasonable to suppose that the legislature, while requiring them to pass an examination as to their qualifications for the duties expressly imposed upon them, intended to impose upon them other duties requiring other special qualifications without requiring them to pass an examination as to their competency for such duties.

In *Dunham* v. *Black Diamond Coal Co.* 239 Ill. 457, the maintenance of an imperfectly insulated electric wire in an entry through which men were expected to pass in such a position that they were likely to be exposed to contact with it was properly held to be a dangerous condition at that place which it was the duty of the mine examiner to observe and mark.

In *Spring Valley Coal Co.* v. *Greig,* 226 Ill. 511, an engineer was killed in an engine room on the surface. The engine was used to take cars of coal up an incline to a retail coal dump and bring the empty cars back. It was customary for the engineer to watch the cars as they went up the incline so as to stop them at the right place, and also to watch them as they came down. The engine and its levers were so located in the engine room that in taking a position to watch the cars the engineer's head was within a few inches of the wire cable, which would sway violently if the speed was rapid. It was held that this was a dangerous condition at the working place of the engineer which should have been discovered and marked. The appellant's principal contention there was that the place where the engineer was working and the machinery with which he performed his work did not constitute a part of the mine which the appellant was required by the statute to have examined for the purpose of determining whether the place for em-

ployees to work in was safe. It was held that the engine room and machinery were a part of the mine and the place was one of those required to be examined and marked if dangerous. That case is not inconsistent with the view that it is only physical conditions which make a working place dangerous which the mine examiner is required to observe and mark.

We are of the opinion that while section 18 of the Mining act is not unconstitutional it does not apply to the conditions shown in this record, and the court erred in refusing the peremptory instruction to find for the defendant. The judgment of the circuit court will therefore be reversed.

*Judgment reversed.*