(No. 19862.—

MATHILDA PRALLE, Plaintiff in Error, *vs.* THE METROPOLI-TAN LIFE INSURANCE COMPANY, Defendant in Error.

*Opinion filed October 23, 1931—Rehearing denied Dec. 2, 1931.*

EARL J. WALKER, for plaintiff in error.

HOYNE, O'CONNOR & RUBINKAM, for defendant in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause is here on writ of *certiorari* to review a judgment of the Appellate Court reversing without remandment a judgment of the superior court of Cook county in favor of plaintiff in error in the sum of $11,197.25 on an alleged contract of accident insurance. Plaintiff in error's original declaration and the first two amended counts filed charge that defendant in error, through its agent, orally promised to insure John H. Pralle, husband of plaintiff in error, against accidents "until and pending acceptance or rejection by it of an application for insurance * * * and until the issuance of a policy by said defendant or until said application has been rejected by said defendant." The declaration then charges the accidental death of John H. Pralle by a motor vehicle. To this declaration common counts were added. Pleas and replications thereto were filed. At

the time of the trial the plaintiff in error filed an additional count, alleging that on April 14, 1925, her husband, the deceased, entered into an oral contract of insurance with the defendant through its agent, Ernest Webber, who had apparent authority to make the contract; that this contract provided that the defendant would pay to the plaintiff $10,000 in case John H. Pralle was accidentally killed at any time within one year from that date, and that the proposition made by the defendant was accepted by Pralle and the annual premium of $63 was paid in full. Later another additional count was filed, wherein plaintiff in error alleged the making of a contract between her husband and the defendant through its agent, Webber, by which, in consideration of the payment of the annual premium of $63, which was paid in full, the defendant "would write up and deliver within a reasonable time a policy dated and taking effect for one year." This count alleges that the agent at that time presented to Pralle a form of application which the latter signed but did not read and did not know the contents of it. To these various counts a plea of general issue was filed and special pleas alleging that the application was not approved and no policy was issued; denying authority of Webber to make the promises alleged in the declaration, and alleging that the contract of insurance declared upon could not lawfully be issued under the statutes of the State of Illinois. At the close of plaintiff in error's evidence, and at the close of all the evidence, defendant in error moved the court to instruct the jury to find the issues for the defendant. These motions were denied. The Appellate Court held, on review of the record, that the superior court erred in refusing to instruct the jury to find the issues for the defendant.

This court may not weigh the evidence on controverted issues of fact, and in reviewing the ruling of the Appellate Court on a motion to instruct the jury the evidence tending to establish the plaintiff's claim must be viewed in its light

most favorable to that claim. The evidence on the part of plaintiff in error tends to show that the agent, Webber, visited Pralle at the latter's home on the evening of April 15, 1925, and told him that if he would pay the total annual premium of $63, sign an application blank and give Webber his age, he, Webber, would fill out the application and that Pralle would receive the protection of the insurance at once. Plaintiff in error's witnesses testified that the premium was paid by check and no receipt or other paper was delivered to Pralle at that time; that Webber said he did not have any "binding receipts" with him but would bring one the next day. She also offered in evidence, as proving the authority of Webber to make such a contract of insurance, the instructions issued by the defendant in error to its agents. In these instructions it appears that the agent is told that "whenever possible the full premium should be collected with the application, and in such cases binding receipts should be issued to furnish immediate protection, subject, of course, to acceptance of application." The instructions to agents also include the provision that the same binding receipt that is used for ordinary life insurance should be used in connection with accident and health insurance. The agent is again told: "Every effort should be made to collect the full first premium when the application is written, and when this is done, the policy, if issued, will take effect from the date of the application * * * where the full first premium has been collected in advance and a binding receipt has been issued. However, the policy, when ready for delivery, must be delivered to the applicant irrespective of the state of his health at that time, as in such cases the insurance is effective from the date of the binding receipt and the insured is entitled to possession of the policy." Plaintiff in error's evidence is that no binding receipt was given Pralle.

Defendant in error offered the testimony of the agent, Webber, who identified the application signed by Pralle and

stated that he turned it, together with the premium paid, over to the defendant in error at its district office in Chicago. He testified that before the application was signed by Pralle, he, Webber, read the questions to him and wrote down the answers; that Pralle gave him a check for the premium and that the witness gave him a receipt therefor, which he tore off the bottom of the application. A copy of a so-called "binding receipt" was introduced in evidence on the testimony of Webber that it was the same form of receipt as that given by him to Pralle. This receipt bore the following language: "No insurance is in force upon the application unless and until a policy is issued thereon and delivered in accordance with its terms." The application signed by Pralle was introduced in evidence. It also contains the above quoted language. Ernest Ingram, district manager for defendant in error, testified that it was his business to go over the applications, and if satisfied with the assistant manager's report on them would sign the application as manager, with the following statement: "Application reviewed and recommended." He testified that he reviewed this application and sent it in to the home office, but before mailing it he learned of Pralle's death and did not sign the statement recommending the issuance of the policy. He testified that he had satisfied himself from the report of the assistant manager that the policy should issue, and that the only reason he did not sign the recommendation was that he had learned of Pralle's death. It is not disputed that the policy was not issued.

It appears that on appeal to the Appellate Court, plaintiff in error, who was appellee in that court, raised the point that the sufficiency of the evidence to sustain the verdict was not before that court because the bill of exceptions showed no motion for a new trial and order overruling the same. Leave was asked and granted to file in that court an amended record containing an amended bill of exceptions and an order approving the same by the trial court. The

Appellate Court also granted plaintiff in error leave to file her bill of exceptions to the order of approval of the amendment by the trial court and a motion to strike the amended bill of exceptions. This motion was denied, and it is here urged that the Appellate Court erred in permitting defendant in error to file an amended bill of exceptions and in refusing to strike same. The ground of the objection to the amended bill of exceptions is, that no memorandum appeared in the clerk's files, and no minute or memorandum appeared on the judge's docket in the trial court on which the order amending the bill of exceptions could be based but the same was ordered from the memory of the judge. It appears, however, that in the common law record of the judgment the clerk had inserted the statement that a motion for new trial was made and denied and that the defendant excepted thereto. While such a statement is not properly a part of the common law record it is sufficient as a minute or memorandum on which an order amending the bill of exceptions could be based. Such an amendment can be made only when there is some memorandum, minute or note of the judge, or something appearing in the records or files of the court, to show the facts justifying the amendment. (*Lindsey* v. *Rosen,* 335 Ill. 402.) The statement of the clerk was sufficient for that purpose, and the Appellate Court did not err in refusing to strike the amended bill of exceptions nor in weighing the evidence.

That court found that the weight of the evidence as to filling in the application signed by Pralle showed that the application was complete when signed. That question is therefore not open for review here. Had this been the only issue the Appellate Court would have been required to remand the cause for a new trial. (*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343.) The bill of exceptions as filed shows, however, that at the close of plaintiff in error's evidence, and at the close of all the evidence, a motion was made to instruct the jury for the defendant. This

amounted to a demurrer to the evidence and afforded authority to the Appellate Court to determine whether the evidence, taken with all reasonable intendments, when viewed in the light most favorable to the plaintiff's claim, tended to support the cause of action laid in her declaration. (*Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387; *Coal Creek Drainage District* v. *Sanitary District,* 336 id. 11.) And this is so though no motion for a new trial was filed. (*Pate* v. *Blair-Big Muddy Coal Co.* 252 Ill. 198; *Yarber v. Chicago and Alton Railway Co.* 235 id. 589.) That court on this issue held that the superior court should have instructed the jury to find for the defendant. The correctness of that holding is open for review here.

Plaintiff in error's declaration appears to be based both on an oral contract for accident insurance and on a contract to deliver a policy within a reasonable time. Her counsel in his brief says that this is a case of a present oral contract for insurance and is to be governed by principles applying to such contracts and not to be confused with an action in tort for delay in delivering a policy. To this position two points are presented for consideration: First, it is apparent from the record that the proof offered by plaintiff in error does not tend to sustain the claim that Webber was authorized to make oral contracts for accident insurance. Plaintiff in error offered in evidence the instructions of the defendant in error to its agents, which, as we have seen, provided that when the full amount of the premium was collected he was to issue a binding receipt and the insurance was to take effect as of the date of receipt for such premium, "subject, of course, to acceptance of the application." This was not proof that Webber had authority to make an oral contract for present insurance, but, on the contrary, showed that he did not have authority to make insurance contracts except by issuing a binding receipt, which provided that there should be no insurance contract unless and until the policy was issued

and delivered. This evidence also showed that the "only immediate protection" which he could offer was subject to acceptance of the application. It may be argued with force that such an agreement was really of no benefit to the insured but resulted in taking his money for a period of time when no insurance was given him, but that fact does not show that Webber had authority to make an oral contract for present insurance. While the authority of an agent to make oral contracts for fire insurance has been frequently upheld in this State, (*Cottingham* v. *National Church Ins. Co.* 290 Ill. 26; *Milwaukee Ins. Co.* v. *Schallman,* 188 id. 213; *Firemen's Ins. Co.* v. *Kuessner,* 164 id. 275;) there is no holding in this State that such authority exists in agents selling health and accident insurance. In *Thompson* v. *Life Ins. Co.* 104 U. S. 252, and *Irie* v. *International Life Ins. Co.* 117 So. (Ala.) 176, on facts similar to those in the case at bar, it was held that a present contract for life insurance did not exist.

As to the second point, counsel for defendant in error argue that under the statute of this State relating to accident and casualty insurance companies the agent thereof has no authority to make oral contracts for insurance. Section 1 of that act (Cahill's Stat. 1929, chap. 73, par. 467,) provides that on and after the first of January, 1916, no policy of insurance against loss or damage from sickness or bodily injury or death of the insured by accident shall be issued or delivered to any person in this State until a copy of the form thereof and of the classification of risks, and the premium rates pertaining thereto, shall have been filed with the insurance superintendent. Section 6 of the same act (Cahill's Stat. 1929, chap. 73, par. 472,) provides: "No policy of insurance provided for by this act shall be issued, except upon the signed application of the person or persons sought to be insured. Any information or statement of the applicant shall plainly appear upon such application in the form of interrogatories by the insurer, and answers by the

applicant. A correct and complete copy of the application shall be attached to or endorsed on the policy when delivered, and unless so attached, or endorsed, the contents of such application, or any part thereof, shall not be admitted in evidence on behalf of the insurer for any purpose whatsoever." It is not contended that the alleged oral contract between Pralle and defendant in error made by Webber, its agent, differed in its terms from that provided by the statutory form of standard policy, and, indeed, no accident insurance company is authorized to make insurance contracts except under the provisions of the act above referred to. That act provides a standard form of policy. It seems clear, therefore, that it is the intent and purpose of that act that oral contracts for accident and casualty insurance of the character here claimed are prohibited.

Counsel for plaintiff in error earnestly argues, however, that defendant in error's evidence shows that its general manager, Ingram, had, in fact, approved the application and had refused to sign it as approved solely because Pralle had died. What force these facts might have were this a case in equity to compel the delivery of a policy we are not called upon here to decide. This is an action at law based on a claimed breach of an oral contract. Whether the facts shown in evidence bind the defendant in error in good faith to issue the policy is a question not here.

We are of the opinion that the superior court should have instructed the jury to find the issues for the defendant in error, and that the Appellate Court did not err in so holding. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*