**Jane La Penta, Appellee, v. Mutual Trust Life Insurance Company, Appellant.**

**Gen. No. 46,370.**

First District, Second Division.

December 14, 1954.

Released for publication January 4, 1955.

Delmar Olson, of Chicago, for appellant; Robert S. Seiler, of Chicago, of counsel.

Michael Fio Rito, and Raymond A. Smerge, both of Chicago, for appellees; William O'Malley, of Chicago, of counsel.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This is a suit brought by Jane La Penta, the beneficiary of a life insurance policy issued by the defendant on the life of Andrew J. La Penta, her deceased husband, in the amount of $3,000. The trial court, hearing the case without a jury, found in favor of the plaintiff in the amount of $3,000 and entered judgment, from which said judgment this appeal is brought on the ground that the finding was against the manifest weight of the evidence.

The policy was issued January 22, 1951, without previous medical examination. The insured died on October 12, 1951 of a coronary occlusion. The defendant's contention is that the insured, in making the

application for the insurance, made certain misrepresentations of fact with the intent to deceive, and which misrepresentations in all events materially affected the acceptance of the risk or the hazard assumed by the company. The questions and answers upon which the defendant relies are:

"No. 6 Q. Are you now under treatment or on a restricted diet for any cause? A. No.

"No. 7 Q. Have you consulted a physician in the last ten years? If so, give the full history below.

"A. Yes. Induction and Discharge examination by Army physicians. Remaining effects—none.

"No. 8 Q. Are you now in good health? A. Yes.

"No. 9 Q. Has any medical examiner or physician expressed an unfavorable opinion as to your insurability or health? A. No.

"No. 10 Q. Have you ever been operated on? Or been advised to have any surgical operation? A. No.

"No. 11 Q. Have you ever been under observation, care, or treatment in any hospital, sanitarium, asylum, or similar institution? A. No.

"No. 13 Q. Have you now, or have you ever had any illness, disease or injury not mentioned in answer to Question 7? A. No."

At the trial, in order to sustain its defense, the defendant introduced eleven exhibits, ten of which are photostatic copies of a portion of the Veterans Administration files. These exhibits, insofar as they are material to the issues involved, contain the following facts: The insured was examined in 1944 and 1945 at an army hospital where a diagnosis of chronic cholecystitis was made, and on January 18, 1945 a certificate of disability for discharge was issued on the ground of chronic cholecystitis. The insured was discharged from the United States Army on January 17, 1945 and awarded a ten per cent disability compensation from the Veterans Administration as of January 18, 1945.

On October 1, 1945 the insured requested an increase in his award. There was in the Veterans Administration files from Dr. Ferdinand B. Monet, the insured's family physician, a letter dated January 17, 1946 stating that he had treated the insured for nonspecific diarrhea and cholecystitis. On January 23, 1948 the insured was examined by the Veterans Administration's physicians, giving a history of pain recurring with a frequency of six weeks to three months, and the report states that he had lost one week's time per year from work since 1945 because of these attacks, and he had been placed on a diet. At that time a working diagnosis of "cholecystitis, chronic, with cholelithiasis" was made, and X-rays were ordered. The second X-ray report was that X-rays of the gall bladder revealed "a bean shaped calcific opacity" in the gall bladder region, "probably a calcified stone within the gall bladder," and that the gall bladder did not visualize. On this report it is stated: "Impression was cholelithiasis and cholecystitis." On July 7, 1948 the disability award of the insured was discontinued due to improvement in his gall bladder condition. These reports were released to Dr. Ferdinand B. Monet, the insured's family physician, March 3, 1948. On July 26, 1948 the insured wrote the Veterans Administration objecting to the discontinuance of his disability award, complaining he still had to remain on the diet and be under doctor's care.

Dr. Monet testified as a witness for the defendant that he had attended the insured from August, 1945, to October, 1951; that he had treated him for his gall bladder condition; that in 1945 he might have been consulted by the insured as many as fifteen times, and in 1946 and 1947 two or three times; that he had certain X-rays taken, which did not visualize the gall bladder; that in 1950 the insured came to his office very often with his wife, but the doctor did not know whether the insured consulted him, and if so, it was very infre-

quently. When called as a witness for the plaintiff, Dr. Monet stated that in 1951 he believed he checked the insured twice and that the insured did not complain of anything unusual, and that it was his opinion that Mr. La Penta's state of health was good.

The beneficiary testified that during 1949, 1950 and 1951 the insured worked regularly; that he had not complained in 1950 or 1951 about pain in the gall bladder region; that during that period he worked ten or twelve hours a day, sometimes six days a week.

This court has heretofore interpreted section 154 of the Insurance Code (Ill. Rev. Stats. ch. 73, par. 766 [Jones Ill. Stats. Ann. 66.829]), which provides:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. This section shall not apply to policies of marine or transportation insurance."

In Hamberg v. Mutual Life Ins. Co. of New York, 322 Ill. App. 138, in a specially concurring opinion, the court says:

"Prior to the passage of this section in 1937 it had been held by the Supreme Court of this State, by this court and by the Supreme Court of the United States and other courts that where it was sought to avoid a life insurance policy on the ground that the insured had made false answers to questions in his applications the

good faith of the applicant in making the answers was always a material one and the question in each case was whether the answers were knowingly false. . . . [Citing cases.] There are other cases holding that where the applicant for insurance gives false answers to questions put to him, the question whether he knew they were false is immaterial. . . .

"In the instant case section 154 provides that no misrepresentation made by an applicant for insurance 'shall defeat or avoid the policy unless it shall have been made with actual intent to deceive.' These words, 'shall have been made with actual intent to deceive' are rendered meaningless by the language which immediately follows them, *viz.*, 'or materially affects either the acceptance of the risk or the hazard assumed by the company.' As stated by Prof. Havighurst in discussing this section—obviously a misrepresentation that does not affect the risk or hazard assumed is wholly immaterial and would not defeat the policy even though fraudulent. 'The obvious purpose of the section is to benefit the assured and not the company.' 32 Ill. Law Rev. 391, 403.

"I think the word 'or' after the word 'deceive' should be construed to mean 'and.' Ayers v. Chicago Title & Trust Co., 187 Ill. 42–56; Voight v. Industrial Com., 297 Ill. 109; People v. Northwestern College, 322 Ill. 120–124."

This construction was cited and approved in Mid-States Ins. Co. v. Brandon, 340 Ill. App. 470, 473.

■■ We accept this interpretation. Under it, it is incumbent upon an insurance company raising the defense of false warranties or misrepresentations made by the insured in the negotiations for the policy to plead and prove that such misrepresentations or false warranties materially affected either the acceptance of the risk or the hazard assumed by the company and were made with actual intent to deceive. The question

of whether or not misrepresentations are material is ordinarily a question of fact for the court, unless they are of such a nature that all persons would agree that they are or are not material. Hancock v. National Council of Knights & Ladies of Security, 303 Ill. 66.

Defendant relies upon the answer to a hypothetical question asked of Dr. Clifton L. Reeder as establishing that the answers made by the insured in the application were material to the risk. The hypothetical question incorporated the questions and answers made in the application by the insured and the reports of the Veterans Administration, stating that in the examination in 1948 the diagnosis was cholelithiasis and cholecystitis. At the close of the question the doctor was asked: "Now, Doctor, assuming that set of facts, do you have an opinion, based upon reasonable medical underwriting practices, as to whether or not the misrepresentations made by the insured with respect to his past and then present medical history were material to the risk presented to the insuring company by the insured's application for insurance?" The doctor then inquired as to whether or not it was shown that there was gall bladder disease or stones in the gall bladder, and he was told, "that is right." He then said: "My opinion is that the history and the medical finding in your hypothetical question definitely will affect the classification in risk in life insurance."

As a matter of fact there was no positive diagnosis of cholelithiasis contained in the Veterans Administration reports. There was a tentative diagnosis of cholelithiasis made in the examination in 1948. X-rays were then ordered. After the X-rays were taken it was stated that "impression was cholelithiasis and cholecystitis." Dr. Reeder's opinion apparently was based on the assumption that there was a positive diagnosis of gall stones. In his cross-examination he says that

gall stones had been mentioned and that would result in a more serious condition. The reports of the Veterans Administration were admitted by agreement, but that does not establish their weight as far as the trier of the fact is concerned.

Furthermore, the hypothetical question contained the assumption that the insured had been advised by his family physician to reduce his weight in the event an operation might be necessary to relieve the gall bladder condition, and a further assumption that he had been advised to have a surgical operation—neither of which is borne out by the evidence.

██ Dr. Reeder subsequently in the examination stated that in his opinion the misrepresentations which were made were material to the risk. Under these circumstances it was for the court as trier of the fact to determine if the assumptions contained in the question were supported by the evidence. If he found they were not, he could properly disregard the entire answer to the hypothetical question. In Goddard v. Enzler, 222 Ill. 462, the court says:

"The expert witness has nothing whatever to do with settling controverted questions of fact or with determining the credibility of witnesses. His opinion is based upon a state of facts which is assumed to be true, and he is not permitted to express an opinion as to whether the evidence establishes the assumed state of facts rather than some other state of facts which the evidence tends to prove. It is the province of the jury to determine whether the state of facts assumed by the expert to be true has been established by the evidence. In case they find that such state of facts has been established, then they are authorized to adopt the opinion of the expert as their conclusion upon that state of facts; but if they find that such assumed state of facts has not been established, then the opinion of the expert, as a matter of course, cannot be followed by them."

Chaney v. Baker, 304 Ill. 362; Thompson v. City of Bushnell, 348 Ill. App. 395; Marshall v. Metropolitan Life Ins. Co., 337 Ill. App. 498.

In Marshall v. Metropolitan Life Ins. Co., 405 Ill. 90, the court says:

"In 29 Am. Jur. 455, it is said, 'Mere temporary ailments or affections, not of a serious or dangerous character, which pass away and are likely to be forgotten because they leave no trace in the constitution are not to be regarded as diseases or serious illnesses within the meaning of a life insurance policy and this is true even though the illness was, at the time, considered serious.' "

In Marshall v. Metropolitan Life Ins. Co., 337 Ill. App. 498, the court says:

"We have examined the other cases cited where the questions of doctors' attendance and hospitalization were misrepresented, and in each of these cases find that there was positive evidence of a serious, and in most cases incurable, disease. . . ."

"The jury in the instant case apparently considered, as did the jury in the Weinstein case, that the illness was not of sufficient importance as to materially increase the risk."

 In this case the testimony shows that the insured was working long hours and was steadily employed. His disability benefits had been withdrawn because of improvement in his health. Dr. Monet testified that in 1951 the insured's state of health was good. At the time of the signing of the application for the insurance policy the insured was 5' 5-¾" tall and weighed 192 pounds. The application for the policy provides: "The Company reserves the right to require a medical examination." At the time of his admission, the insured was obviously overweight. No medical examination was asked by the defendant. The burden of proof was on the defendant. It is our opinion that

there was sufficient evidence in the record for the court to have found the issues for the plaintiff. In Western & Southern Life Ins. Co. v. Brueggeman, 323 Ill. App. 173, the court says:

"As we have repeatedly said, a court of review will not substitute its findings of fact for the findings of fact of a trial court, unless the judgment is clearly against the manifest weight of the evidence (Chamblin v. New York Life Ins. Co., 292 Ill. App. 532), and as a reviewing court, we will accept the findings of the trial judge upon questions of fact, unless such findings are clearly and palpably erroneous (Kinnah v. Kinnah, 184 Ill. 284)."

The finding of the court was not against the manifest weight of the evidence. The judgment of the municipal court of Chicago is affirmed.

Judgment affirmed.

SCHWARTZ, P. J. and ROBSON, J., concur.