444 F.2d 640
 AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a
national banking association, not individually,
but as Trustee under Trust No. TI-24356,
Plaintiff-Appellant,
v.
CERTAIN UNDERWRITERS AT LLOYD'S LONDON, World Auxiliary
Insurance Co., Ltd., sued as Lloyd's of London, American
Home Assurance Company, Associated Indemnity Corporation,
sued as Fireman's Fund, American Insurance Company,
Defendants-Appellees.
NORTH AMERICAN LIFE & CASUALTY COMPANY and Old Republic
Insurance Company, Defendants-Cross-Appellants,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a
national banking association, not individually,
but as Trustee under Trust No. TI-24356,
Plaintiff-Cross-Appellee.
 Nos. 17803, 17804.
 United States Court of Appeals, Seventh Circuit.
 April 21, 1971, Rehearing Denied in No. 17803, June 21, 1971.
 
 J. Sterling Mortimer, Mortimer & Hoffman, Chicago, Ill., attorneys for American National Bank & Trust Co.
 C. Roy Peterson, Newell S. Boardman, Chicago, Ill., for defendants-appellees; Lord, Bissell & Brook, Chicago, Ill., of counsel.
 Before HASTINGS, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.
 FAIRCHILD, Circuit Judge.
 
 
 1
 Action against six insurers to recover on account of the accidental death of Robert C. Usher.[1] All defendants alleged his death was suicide, but that issue has not been determined. Five defendants sought summary judgments based on other defenses. The district court granted summary judgment on some grounds and denied it on others. Final judgments in favor of three insurers were entered under Rule 54(b) F.R.Civ.P. Plaintiff appealed from these judgments and two defendants appealed from the order denying them summary judgment.
 
 
 2
 Mr. Usher was struck and killed by a train January 23, 1967.
 
 
 3
 In 1956 and '57 he obtained life insurance from Republic National Life Insurance Company in the total sum of $100,000, which has been paid, but with a like amount of accidental death benefit, which is contested. Republic did not seek summary judgment, and is not involved on appeal.
 
 
 4
 On February 1, 1966, he obtained accident insurance from Old Republic Insurance Company in the sum of $200,000 for loss of life. Old Republic moved for summary judgment on its defense of material misrepresentation as to health. The motion was denied.
 
 
 5
 On February 1, 1966, Usher obtained life insurance from North American Life & Casualty Company in the sum of $200,000. Several applications for reinstatement were made during 1966. North American's motion based on its defense of material misrepresentation as to health was denied.
 
 
 6
 On December 8, 1966, Usher's agents applied to a group of insurers referred to herein as Lloyd's, seeking accident insurance in the sum of $500,000 for loss of life. Summary judgment was granted to Lloyd's, based on its defense of material misrepresentation with respect to other insurance and its defense that there was no written contract. The court refused to base summary judgment on the defense of material misrepresentation with respect to health.
 
 
 7
 On December 29, 1966, Usher's agents applied to an insurer referred to herein as Fireman's Fund for accident insurance in the sum of $100,000, for loss of life. A binder was issued. Summary judgment was granted, based on the defense of material misrepresentation with respect to other insurance and the defense that the binder was subject to underwriter's approval which was not given. The court refused to base summary judgment on the defense of misrepresentation with respect to health or the defense that the application was not signed by the insured.
 
 
 8
 On December 29, 1966, Usher's agents applied to American Home Insurance Company for accident insurance in the sum of $200,000 for loss of life. A binder was issued. Summary judgment was granted, based on the defense that the binder was subject to underwriter's approval which was not given. The court refused to base summary judgment on the defense of misrepresentation with respect to health or the defense that the application was not signed by the insured.
 
 
 9
 1. Dismissal of appeals from interlocutory order. Old Republic and North American joined in the motion for summary judgment, but only on the ground of misrepresentation with respect to health. As to them the order, denying the motion, was not final but interlocutory. They did not obtain leave to appeal pursuant to 28 U.S.C. 1292(b), and their appeals must be dismissed.
 
 
 10
 2. Defense of binders subject to approval and not approved. Summary judgment, in favor of Fireman's Fund and American Home, was granted on this ground.
 
 
 11
 On January 11, 1967 Fireman's Fund wrote a letter confirming that 'as of December 29, 1966, we have bound $100,000 of Accidental Death indemnity subject to approval of the application by our underwriting committee.' The application was never approved. A letter giving notice of rejection was dated February 8. It stated that the application was incomplete in certain particulars and that 'normal subsequent investigation' revealed the applicant was grossly overinsured considering his income and net worth and that the application would have been declined for that reason even if valid.
 
 
 12
 Mr. Gygax, an underwriter for Fireman's Fund, made an affidavit that he was under orders not to write accidental death coverage in any amount where the existing coverage and the coverage applied for was over the lesser of ten times income or net worth, or one million dollars. As of the date of application Usher was carrying $800,000 of accidental death insurance, was applying to other companies for $300,000 and to Fireman's Fund for $100,000, a total of $1,200,000.
 
 
 13
 American Home issued a form, effective December 30, stating 'This insurance is bound subject to underwriting approval by the Company of application form 905.' The application was never approved, although the record shows no specific rejection. Usher's signature to the application was not personally affixed, and it was shown by affidavit of an underwriter the company's regular custom and practice would have required rejection of an application not personally signed by the applicant.
 
 
 14
 Conditional binders vary greatly in their terms and in interpretation in different jurisdictions.[2] The problem presented when a loss or serious change in insurability occurs in the interim between issuance of a binder subject to underwriter's approval and the time of the underwriter's decision has, broadly speaking, three principal possible solutions: (1) giving retroactive as well as prospective effect to rejection, thus treating the application, notwithstanding the 'binder' as no more than an offer by the applicant; (2) giving no retroactive effect to a rejection, thus treating the binder as a contract of insurance during the interim; (3) giving effect to the rejection only where, on as objective a basis as possible, it is reasonable to say that the rejection is based on the circumstances which existed at the time of the application.
 
 
 15
 The decision which expressly adopted the mere offer theory is Gerrib v. Northwestern Mutual Life Insurance Company (1930), 256 Ill.App. 506. It involved a receipt for one year's premium, paid at the time of application, providing that if the insurer shall be satisfied that the applicant was an acceptable risk, the insurance shall be effective from the date of the receipt, but if the insurer rejects, the premium shall be returned.
 
 
 16
 The court said, page 522: 'In the opinion of this court the provisions in the application quoted have no other or further meaning than that, in case the defendant shall be satisfied that the applicant is an acceptable risk and approves the application, then the contract shall be considered as having become effective on the date of the medical examination, and until the application is approved the applicant may withdraw the application and demand the return of the premium, as the application is a mere offer to accept insurance and the weight of authority in the various States confirms us in this opinion.'
 
 
 17
 Other cases dealing with receipts having similar provisions and holding that no insurance was in force are La Barre v. Prudential Ins. Co. of America (1937), 284 Ill.App. 653, 2 N.E.2d 354; Sommerio v. Prudential Ins. Co. of America (1937), 289 Ill.App. 520, 7 N.E.2d 631; and Scheinman v. Phoenix Mut. Life Ins. Co. of Hartford, Conn. (7th Cir., 1969), 409 F.2d 999, applying Illinois law.
 
 
 18
 Treating the binder in the instant case as leaving the application in the status of a mere offer fails to accord meaning to the word 'bound.' We have no reason to conclude the Illinois courts would choose that result.
 
 
 19
 Plaintiff contends that solution (2) is appropriate and that the binder put insurance in force until acceptance or rejection by the insurer. In the decisions just cited, the Illinois courts and this court, applying Illinois law, have rejected the proposition that the receipts involved in those cases created temporary insurance. Solution (2), moreover, would create temporary insurance of a risk which may objectively and reasonably be found to have been uninsurable at the time of application.
 
 
 20
 It seems to us that solution (3) fairly balances the applicant's interest in prompt protection, if available, against the insurer's interest in accepting only the risks which are insurable under its underwriting standards, gives some effect to all the terms used in the binder, and does not conflict with past decisions of the Illinois courts.[3]
 
 
 21
 Fireman's Fund has shown that under its rules the amount of other insurance carried and applied for at the time of application would have caused the rejection of the application and American Home has shown that under its regular custom and practice, the application would have been rejected because not personally signed by Usher. Plaintiff has not shown there is a genuine issue over the existence or reasonableness of these rules and the facts relied on are undisputed.
 
 
 22
 We therefore conclude that, applying solution (3), these defendants were entitled to summary judgment on this ground.
 
 
 23
 3. Lloyd's oral agreement defense. Summary judgment in favor of Lloyd's was granted on this ground.
 
 
 24
 The several defendants referred to as Lloyd's admit that the application (proposal) dated December 8, 1966 was submitted to Menner, 'a broker for' Lloyd's; that Menner submitted the application to Lloyd's; that January 11, 1967, Lloyd's issued Provisional Cover Notes to Menner in the total amount of $500,000; that Menner verbally confirmed to Usher's agent that accident insurance totalling $500,000 was bound as per the conditions set forth in the Provisional Cover Notes; and 'that it was their practice to issue such Provisional Cover Notes, and thereafter to issue standard form accident policies unless irregularities in the application were discovered.'
 
 
 25
 No policies were ever issued and Menner's only communication with Usher's agent purporting to bind Lloyd's was oral.
 
 
 26
 The provisional cover notes were signed by Wright, Deen & Co. Ltd., insurance brokers and underwriting agents, of London. They were addressed to Menner and Stated that 'In accordance with your instructions, we have effected Provisional Insurance with Lloyds Underwriters * * * in the name of Robert C. Usher * * * against PERSONAL ACCIDENT INSURANCE for a period of 12 months at 13th December, 1966 at a premium rate, of 1.35%.-Less 25% And tax. Subject to usual Policy Form 'K' conditions and terms N.M.A. 981/1442 Special conditions:-- INFORMATION: Proposal Form dated 8th December, 1966 aged 46.'The provisional cover notes do not state that the insurance is subject to approval.
 
 
 27
 Lloyd's relies on the absence of delivery of a writing to Usher's agents, and asserts that an oral contract to insure against accidental death is unenforcible in Illinois. Pralle v. Metropolitan Life Ins. Co. (1931), 346 Ill. 58, 178 N.E. 371.
 
 
 28
 In Pralle the insurer's agent received an application for accident insurance and orally promised the applicant that insurance was in force from then until acceptance or rejection. After quoting the statute requiring a standard form and a particular form of application, the Supreme Court of Illinois concluded as follows:
 
 
 29
 'It is not contended that the alleged oral contract between Pralle and defendant in error made by Webber, its agent, differed in its terms from that provided by the statutory form of standard policy, and, indeed, no accident insurance company is authorized to make insurance contracts except under the provisions of the act above referred to. That act provides a standard form of policy. It seems clear, therefore, that it is the intent and purpose of that act that oral contracts for accident and casualty insurance of the character here claimed are prohibited.'
 
 
 30
 If the Court meant that no accident insurance could ever be in force prior to the insurer's issuance of a standard form policy, any form of binder would be invalid, including written ones, and the Court need not have specified oral contracts.
 
 
 31
 In Pralle, there was no written agreement to insure. In the case at bar the insurer has admitted its responsibility for written acknowledgments that, subject to the terms of the standard policy, the insurance applied for was already in force. The applicant's agents were orally notified of the existence of the written acknowledgments, or provisional cover notes. We perceive no sound reason why such oral notice should not be treated as constructive delivery of the acknowledgments, enforcible according to their terms. We do not think the Illinois Court would equate written acknowledgments, so constructively delivered, with a wholly oral promise to insure, and hold them unenforcible.
 
 
 32
 Accordingly we conclude that summary judgment should not have been granted to Lloyd's on this ground.
 
 
 33
 4. The defense of misrepresentation with respect to other insurance. Summary judgment was granted in favor of Lloyd's and Fireman's Fund on this ground. It is unnecessary to consider whether Fireman's Fund was entitled to summary judgment on this ground, since it has already been found to be so entitled on another ground.
 
 
 34
 The application to Lloyd's was dated December 8, 1966. Question 5 read in part: 'What accident or disability insurance have you other than this and what applications for such insurance have you now pending?' The answer inserted with respect to 'Accidental death' was: '$300,000 common carrier purchased 3 yrs. ago.' The record shows that as of December 8 Usher had $200,000 accidental death insurance from Old Republic and $100,000 accidental death benefit on a life insurance policy of Republic National. It does not appear that he had any other accidental death insurance and the reference to 'common carrier purchased 3 yrs. ago' appears to be an error. Although Usher applied for additional substantial amounts in the weeks remaining before his death,[4] it has not been shown that any applications were pending or even contemplated on December 8. The application appears to have disclosed the correct amount and it is not shown that the erroneous reference to common carrier was material as a matter of law.
 
 
 35
 Accordingly we conclude that summary judgment could not be granted in favor of Lloyd's on this ground.
 
 
 36
 5. Defense of misrepresentation as to health. This ground was rejected by the district court as to every defendant who raised it. The appeals of Old Republic and North American are not properly before us. It is unnecessary to consider whether Fireman's Fund and American Home were entitled to summary judgment on this ground, since they have already been found to be so entitled on other grounds. We consider it as to Lloyd's because if Lloyd's was entitled to summary judgment on this ground, the judgment in favor of Lloyd's would be affirmed notwithstanding the fact that we conclude Lloyd's was not so entitled on the two grounds assigned by the district court.
 
 
 37
 The Lloyd's application contained only one question specifically inquiring about health. Question 10 read: 'Are you, to the best of your knowledge and belief, now in good health and free from physical defect or infirmity?' Usher answered 'Yes.'
 
 
 38
 The basis for the motion for summary judgment on the ground of misrepresentation as to health is a record of the Mayo Clinic at Rochester, Minnesota. It reveals that Mr. Usher was seen there January 17, 1967 (almost six weeks after the Lloyd's application and six days before Usher's death). The clinical history, recorded by Dr. Juergens, reads in part as follows:
 
 
 39
 'Here for eval of 'eye trouble,' i.e., blurring vision & diplopia worse since auto accident 7/66. It is to be noted that he had eye muscle surgery Jan. '36 for muscle imbalance c strabismus and he has had some diplopia ever since that surgery. 'Also amnesic. episodes since auto accident. 'On occasion he doesn't recall how he got to location he is in or how long he has been there. He never had these before auto accident. Episodes not accompanied by fainting but he can't account for the time elapsed (c.5 k min); no convulsive movements. Pt. had some postural vertigo c. 2 yrs ago only occurring upon lying down; this has not recurred c same intensity but he does note some dizziness with upward gaze even now. 'At time of accident 7/66 he was thrown from car & unconscious for c.5 k min. He can't recall seeing car that his car struck and apparently there were no witnesses. About 2 wks ago he had another accident, this a minor 'fender-bender' which he is inclined to attribute to his amnesic episodes because he can't remember all details.'
 
 
 40
 It is the theory of the defense that the recorded history establishes, beyond any genuine issue of fact and as a matter of law, that on December 8 Usher had complaints (diplopia, and amnesic episodes) which were inconsistent with a representation that he was in good health and that the resulting misrepresentations, even if not made with actual intent to deceive, materially affected the assumed.[5] assumed.
 
 
 41
 Under the law of Illinois, the 'materiality of false representations in an application for insurance is a question for the jury * * *' /6/ 'unless they are of such a nature that all persons would agree that they are or are not material.'[7]
 
 
 42
 There are several reasons why we conclude that defendant has not established the absence of a genuine issue of fact as to this defense:
 
 
 43
 (1) The fact that Usher was sufficiently disturbed by diplopia and amnesic episodes to seek medical help January 17 does not conclusively establish that those complaints existed in substantial severity the preceding December 8. The record of the history itself suggests that these complaints became a greater cause for concern in early January at the time of a minor accident.
 
 
 44
 (2) We are unaware of any evidence that Usher complained of these symptoms before or until almost six weeks after the date of application. His daughter, age 18 at the time of his death, and living at home, gave her deposition. He had not made these complaints to her, although she recalled knowing of the accident in the summer of 1966 and knew he wore thick glasses and had been cross-eyed when very young.
 
 
 45
 (3) An individual's recollection of the existence and severity of subjective complaints at times in the past is likely to be open to question, and more so when reflected only in notes of a third party, albeit a physician.
 
 
 46
 (4) Dr. Juergens noted his impression that Usher was 'somewhat vague and introspective,' thus giving a basis for question as to the accuracy of Usher's description of his own complaints.
 
 
 47
 (5) Dr. Juergens noted a question about the existence of amnesia and wrote 'More likely hysterical fugue or possibly epileptiform attack.' Dr. Juergens' explanation has not been made part of the record.
 
 
 48
 (6) The record contains the affidavit of a pathologist who attended the autopsy performed on Mr. Usher. He found no pathology which would warrant an evaluation of diplopia, nor warrant any claims as to amnesic episodes and stated his opinion that the clinical complaints at Mayo's may very well have been 'functional.'
 
 
 49
 Accordingly, the appeals of North American and Old Republic are dismissed; the judgments in favor of Fireman's Fund and American Home are affirmed; the judgment in favor of Lloyd's is reversed, and the cause remanded for further proceedings. Fireman's Fund and American Home are each allowed one-third of defendants' total costs on appeal, recoverable from plaintiff. Plaintiff is allowed one-third of its costs on appeal, recoverable from Lloyd's.
 
 On Petition for Rehearing
 
 50
 PER CURIAM.
 
 
 51
 With respect to part 3 of our opinion, Lloyd's asserts that Menner's verbal confirmation to Usher's agent that accident insurance totalling $500,000 was bound as per the conditions set forth in the Provisional Cover Notes occurred before the Provisional Cover Notes were in existence and therefore could not have constituted constructive delivery. Assuming the assertion is correct, we think the result is not changed. In that event the verbal confirmation amounted to a promise that the Provisional Cover Notes would be issued. They were issued, and forwarded to Menner, the broker. Under these circumstances we think delivery to the broker was constructive delivery to the applicant, and a written, rather than oral, contract existed.
 
 
 52
 The petition for rehearing is denied.
 
 
 
 [1]
 Jurisdiction is founded on diversity. All parties agree that Illinois law controls
 
 
 [2]
 See 1 Couch on Insurance 2d 619, 14:39-43
 
 
 [3]
 The Supreme Court of Illinois, in 1931, noted but did not decide the question whether an insurer could be compelled to deliver an accidental death policy where its manager approved the application but refused to sign the approval solely because the applicant had died in the interim. Pralle v. Metropolitan Life Ins. Co. (1931), 346 Ill. 58, 178 N.E. 371, 374
 
 
 [4]
 He had $200,000 from Old Republic, $100,000 accidental death benefit on life insurance policy of Republic National. He applied for $500,000 from Lloyd's on December 8; $100,000 from Fireman's Fund, $200,000 from American Home, $100,000 from Interstate Fire & Casualty, all on December 29; and more than $150,000 on various dates in January, 1967, totalling in excess of $1,350,000
 
 
 [5]
 Actual intent to deceive need not be established if the misrepresentation materially affected the acceptance of the risk or the hazard assumed. S.H.A. ch. 73, 766 and 971a(3), Campbell v. Prudential Insurance Co. of America (1958), 15 Ill.2d 308, 155 N.E.2d 9
 
 
 [6]
 Mooney v. Underwriters at Lloyd's, London (1966), 33 Ill.2d 566, 213 N.E.2d 283, 285
 
 
 [7]
 La Penta v. Mutual Trust Life Insurance Company (1954), 4 Ill.App.2d 60, 66, 123 N.E.2d 165, 168; Life Insurance Company of North America v. Roberson (S.D.Ill., 1967), 276 F.Supp. 639, 641